## Richmond

OLVIN TAMLIN FERGUSON V. MYRTLE C. FERGUSON, EXECUTRIX OF THE ESTATE OF OLVIN LEWIS FERGUSON, DECEASED, SUBSTITUTED DEFENDANT IN ERROR.

OLVIN TAMLIN FERGUSON V. RONALD A. FERGUSON, AN INFANT, WHO SUES BY HIS MOTHER AND NEXT FRIEND, MYRTLE FERGUSON.

June 14, 1971.

Record Nos. 7511 and 7512.

Present, Snead, C.J., I'Anson, Gordon, Harrison, Cochran and Harman, JJ.

*Aldine J. Coffman, Jr.* (*Coffman & Coffman*, on brief), for plaintiff in error in Record Nos. 7511 and 7512.

*F. Lee Ford* (*R. Gordon Scott; Ford, Avis, Avis & Scott,* on brief), for defendant in error in Record Nos. 7511 and 7512.

HARRISON, J., delivered the opinion of the court.

Ronald A. Ferguson, an infant, instituted an action in the court below against Sandra Sue S. Worley and Olvin Tamlin Ferguson, to recover for personal injuries received in an automobile accident.

At the same time Olvin Lewis Ferguson, father of Ronald A. Ferguson, instituted an action against the same defendants to recover the medical expenses incurred by him in obtaining treatment for these injuries.

The cases were tried jointly and resulted in verdicts of $15,000 in favor of Ronald A. Ferguson against Olvin Tamlin Ferguson, and $1,585.75 in favor of Olvin Lewis Ferguson against Olvin Tamlin Ferguson. The jury found in favor of the defendant Worley. The verdicts were approved by the trial court and final judgments entered thereon. We granted Olvin Tamlin Ferguson writs of error in both cases. He contends that the evidence failed to show as a matter of law that he was guilty of gross negligence which was the proximate cause of the accident, and that the trial court committed error in its rulings on several instructions.

Subsequent to the writs of error being granted, Olvin Lewis Ferguson died, and Myrtle C. Ferguson, his executrix, was substituted as defendant in error in the place and stead of the decedent. For convenience the parties will be referred to by name or according to the positions they occupied in the lower court.

The accident occurred about 7:30 A. M. on the 16th day of April, 1969 in the City of Hampton, at the intersection of Mercury Boulevard and Tallwood Drive. Mercury, a widely traveled highway, runs in an easterly direction from the James River Bridge. It is a dual highway with two lanes of travel in each direction separated by a median grass strip. Running along the south side of, and parallel to Mercury, is a service road. Tallwood runs in a northerly direction and forms a T intersection with the southern edge of Mercury and the service road.

At the time of the accident Mrs. Worley was driving her cream colored Oldsmobile automobile in an easterly direction on the inside traffic lane of Mercury and approaching the Mercury-Tallwood intersection. Her speed was approximately 40 miles per hour. Mrs. Worley testified that in the outside traffic lane, and to her right, also

proceeding east, was a black car some 6 or 7 car lengths ahead of her, and that following the black car was a red Torino, also in the outside lane, and some 3 or 4 car lengths in front of her.

At about the same time the defendant, Olvin Tamlin Ferguson, and his 16 year-old brother, Ronald A. Ferguson, were driving in a westerly direction on the service road, and approaching Tallwood at the point where it intersects with Mercury. Defendant was driving his Opel automobile. It was his intention to drive west on the service road to Tallwood, turn right and cross the two east traffic lanes on Mercury, and the median strip and turn left preliminary to proceeding west in one of the west traffic lanes of Mercury.

It was raining at the time and the weather was misty or hazy. The Ferguson brothers testified that when they reached Tallwood and the point where it intersects with Mercury, the defendant brought his automobile to a stop. While in that position defendant said that two cars passed going east on Mercury—"[o]ne passed before I quite got to the intersection, and after I came to a complete stop, one other passed". He estimated that he stopped approximately 4 feet from the south edge of Mercury. He noticed one other car to his left (east) on Mercury which he said was a dark colored car traveling in the right-hand lane, a considerable distance away. He also noted that a car had either stopped in the median, or was moving slowly therein, between the east and west lanes of Mercury. He assumed it was going to turn either into Tallwood or make a U-turn to go east on Mercury.

Defendant was asked how much time elapsed from the passing of the second car until he moved out on Mercury, and answered: "[W]hen the second of the two cars passed, I glanced back to my left, and this is when I seen the dark car travelling in the right lane headed eastward, and then I looked straight ahead and proceeded out". On cross-examination he was asked: "Your gaze as you moved from a stopped position to where you were hit was fixed on that car [the one in the median strip] to see what it was going to do." He answered, "Yes".

The defendant testified that he had proceeded across the outside lane of Mercury and thought that his front end had almost reached the median when the left side of his car was struck by the front of the Worley vehicle. He said that he never saw Mrs. Worley until the instant of collision. His brother Ronald (plaintiff) testified substantially as did the defendant. He did not see the Worley vehicle

until his brother got in the middle of the road at which time he cried out "Tammy, watch out".

Mrs. Worley testified that when she first saw the Opel automobile it was "coming onto the road . . . [f]rom Tallwood Drive". She had not seen the car prior to that time. She believed that she was then at a point on the highway near a Lion's Club sign set in the median strip. She estimated the sign was approximately 100 feet from the intersection. Another witness estimated the distance to be approximately 180 feet.

Sergeant William H. Wade, of the Hampton Police Department, was also proceeding east in the outside lane of Mercury and witnessed the accident from a distance. He noted the Opel car approaching from the right and testified: "I thought to myself gee is he going to come into the main highway and I think I was slightly distracted by something and the next instant I seen one car flying through the air or twirling around in a circle, which was the smaller of the two cars. . . ." He said the accident occurred almost in the middle of the intersection. He did not think the Opel stopped prior to entering Mercury Boulevard, but was unwilling to so testify. The impact occurred in the inside traffic lane in which Mrs. Worley was traveling.

In view of our disposition of this case, and the possibility that it may be retried, we do not comment further or in greater detail on the evidence. A jury has absolved Mrs. Worley of negligence and found that the defendant, Olvin Tamlin Ferguson, was guilty of gross negligence. This verdict has the approval of the trial judge. We are unable to say that as a matter of law defendant was not guilty of gross negligence in the operation of his car at the time and under the circumstances reflected by the testimony.

Defendant assigns error to the action of the trial court in the granting and refusing of 13 instructions. Among the instructions of which he complains is Instruction No. 3 which reads as follows:

## "INSTRUCTION NO. 3

"The Court instructs the jury that the defendant, Olvin Tamlin Ferguson, while driving and operating his automobile with the plaintiff as a guest passenger was under the duty to exercise reasonable care for the safety of the plaintiff, and if you further believe that the defendant, Olvin Tamlin Ferguson, failed to exercise reasonable care and was grossly negligent in failing to do so and that such failure proximately caused or contributed to the in-

juries of the plaintiff, and if you further believe that the plaintiff was free of any negligence which proximately caused or contributed to his own injuries, then your verdict shall be for the plaintiff and against the defendant, Olvin Tamlin Ferguson."

Clearly the granting of Instruction No. 3 was error for it told the jury that the defendant was under the duty to exercise reasonable care for the safety of the plaintiff. The plaintiff was a guest passenger in defendant's automobile and the degree of care that defendant owed him was a degree less than ordinary care. Further, this instruction told the jury that they could find that defendant was grossly negligent by his failure to exercise reasonable care. In *Goodwin and Reed* v. *Gilman*, 208 Va. 422, 427, 157 S. E. 2d 912, 916-17 (1967) we said:

> "We did not intend by the use of that language to approve the giving of an instruction that in effect told the jury a driver owes to his guest-passenger the duty to exercise ordinary care. Nor did we intend to indicate that a court should instruct a jury about the duties that must be performed in the exercise of ordinary care where recovery depends upon proof of gross negligence, rather than ordinary negligence."

It is proper, where there is supporting evidence, for a jury to be instructed on the statutory duties which devolve upon an operator of a motor vehicle upon the highways in Virginia. However, they should not be left under the impression that from the mere violation of a statutory duty, which constitutes ordinary negligence, they can find gross negligence. Neither should they be left under the impression that where a driver has violated several statutory duties, or is guilty of more than one act of ordinary negligence, they can, because of the sheer number of acts alone, conclude that they can find gross negligence therefrom.

True, the cumulative effect of several acts of negligence may constitute gross negligence, and we have so held in many cases. This was not because of the number of acts of simple negligence, but because the cumulative acts, when taken and considered together under the facts and circumstances of the cases under review, did constitute gross negligence. Also, the violation of one statutory duty, or one act of negligence, may be under such circumstances and conditions as to constitute gross negligence.

Defendant also complains that a series of instructions granted by the trial court failed to define clearly the nature of the defendant Ferguson's duty of care to the plaintiff, and to sufficiently distinguish such duty from the duty of care Mrs. Worley owed to the plaintiff. His contention has merit. Typical of these instructions is Instruction No. 8-B which reads as follows:

## "INSTRUCTION NO. 8-B

"The Court instructs the jury that it is the duty of the operator of a motor vehicle to exercise ordinary care:

"1. To keep a proper lookout;

"2. To keep his vehicle under proper control;

"3. To operate his vehicle at a reasonable speed under the circumstances and traffic conditions then and there existing.

"*If you believe from a preponderance of the evidence that the defendant, Ferguson, failed to exercise ordinary care in the performance of any one or more of the foregoing duties, then he was negligent;* and if you further believe from such evidence that any such negligence was a proximate cause of the collision and that the defendant, Mrs. Worley, was free from negligence, then you shall find your verdict in favor of the defendant, Sandra Worley." (Italics supplied.)

In the instant case the plaintiff's cause of action was asserted against both the driver of the car in which he was riding as a guest, and the driver of another vehicle which collided with that car. It was necessary for the court to distinguish sharply between the respective duties owed the plaintiff by the two defendants. While operators of vehicles have a continuing and general duty to exercise care, their liability for a failure to do so varies, depending upon the status of the person injured. Liability to a guest passenger arises from the gross negligence of his host driver, and we cannot approve the giving of an instruction which permits the jury to conclude that such driver owes to his guest the duty to exercise ordinary care only. *Goodwin and Reed v. Gilman, supra.*

In several instructions the trial court detailed separate duties owed by the driver of a vehicle and in each specifically said that if the defendant failed to exercise ordinary care in the performance of that

specific duty, he was negligent. Despite the granting of other instructions by the court concerning the liability of defendant Ferguson and defining gross negligence, we are unable to say that the jury did not conclude from the wording of the instructions under attack that the degree of care owed by the defendant Ferguson was that of ordinary care.

Manifestly it was proper for the jury to have been told that for a verdict to be rendered against Mrs. Worley she must have been guilty of a failure to exercise ordinary care, in the performance of one or more of her duties owed the plaintiff, and that such failure was the proximate cause of the accident, or efficiently contributed to its cause. It was also proper for the jury to have been told that if the proximate cause of the accident was solely the negligence of defendant Ferguson there could be no recovery against Mrs. Worley. However, in so instructing the jury, the respective degrees of care owed plaintiff by defendant Ferguson and owed plaintiff by defendant Worley should have been clearly delineated. We do not feel that this was done in the instant case and we are unable to say that such failure constituted harmless error.

Defendant also complains of so much of Instruction No. 2 as defines gross negligence in the following language:

> "Gross negligence is that degree of such negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another."

We are conscious of the fact that gross negligence has been variously defined in many cases that have come under review and been affirmed by this court. Notwithstanding this, we are of opinion that trial courts would be better advised to define gross negligence as *that degree of negligence which shows indifference to others as constitutes an utter disregard of prudence amounting to a complete neglect of the safety of the guest. It must be such a degree of negligence as would shock fair minded men although something less than willful recklessness. See Haymore v. Brizendine*, 210 Va. 578, 172 S. E. 2d 774 (1970).

In every case involving gross negligence, the jury should be clearly instructed on what constitutes gross negligence and told that such negligence must be established by a preponderance of the evidence and be the proximate cause of the accident or that it efficiently contributes to cause the accident. Gross negligence may be defined in a

separate instruction or in the finding instructions. If defined in a separate instruction, then in each finding instruction setting forth a duty, or the duties, owed plaintiff by defendant, the jury should be told that for the plaintiff to recover the defendant must have breached his duty in a manner and under such circumstances as to constitute gross negligence, as defined in the separate instruction, and make specific reference thereto, and further that such negligence must be the proximate cause of the accident or that it efficiently contributed to cause the accident.

We find no reversible error in other assignments made by the defendant.

For misdirection of the jury in the particulars noted the judgments of the lower court against the defendant, Olvin Tamlin Ferguson, and in favor of the respective plaintiffs, are reversed and this case is remanded for a new trial not inconsistent with the views herein expressed.[1]

*Reversed and remanded.*

---

[1] We note from the record in this case that the trial judge had under consideration a total of 37 instructions and that he granted 27, denied 6 and 4 were withdrawn. The observations made by this court in the recent case of *Bagley* v. *Weaver*, 211 Va. 779, 180 S.E.2d 686 (1971) are equally pertinent here.