## Richmond

FREDERICA S. CLARK v. BILLY RAY CLARK.

January 16, 1976.

Record No. 750011.

Present, l'Anson, C.J., Carrico, Harrison, Cochran, Poff and Compton, JJ.

*John H. Herbig* (*Robert L. Harris; Robert N. Johnson; Harris, Tuck, Freasier & Johnson,* on briefs), for plaintiff in error.

*Frank B. Miller, III* (*Sands, Anderson & Marks,* on brief), for defendant in error.

l'ANSON, C.J., delivered the opinion of the court.

The plaintiff, Frederica S. Clark, instituted this action against the defendant, Billy Ray Clark, her husband, to recover damages for personal injuries sustained while she was riding as a guest in an automobile driven by him. The motion for judgment alleged that defendant was guilty of gross negligence which proximately caused the accident and plaintiff's injuries. At the conclusion of plaintiff's evidence, the trial court sustained defendant's motion to strike the evidence and entered

summary judgment in his favor on the ground that the evidence was insufficient to support a finding of gross negligence.

The accident took place in Chesterfield County, Virginia, about 3:18 a.m. on August 4, 1973, on an exit ramp by which westbound traffic on Powhite Parkway merges with southbound traffic on Chippenham Parkway. Powhite Parkway is a four-lane, limited access highway, which is divided by a median and runs east and west. The roadway was dry and the sky was cloudy at the time of the accident.

Approximately one mile east of the exit ramp in question, westbound traffic on Powhite Parkway passes through a toll booth, and, about one-half mile thereafter a sign designates the maximum speed, then 60 miles per hour. Proceeding west, there are four highway signs which warn of the merger with Chippenham Parkway and which limit the maximum safe speed for the exits. The first sign, which is located adjacent to the highway about six-tenths of a mile west of the toll booth, indicates the merger with Chippenham Parkway and designates the proper lanes for the northbound and southbound exits. Above the northbound exit hangs a 12-by-16-foot sign which reiterates the exit warnings. As traffic proceeds west to the southbound exit, there is a third sign posted adjacent to the highway which reads: "Ramp 35 m.p.h." The highway inclines over a bridge and then curves 93 degrees to the left, constituting the ramp onto southbound Chippenham Parkway. The outer limit of the curve is delineated by a three-inch curb and a series of reflectorized posts. At the curve there is a fourth warning sign, which limits the maximum safe speed to 30 miles per hour.

The physical evidence reveals that the car which defendant was driving failed to negotiate the curved exit ramp. The vehicle left the road at the beginning of the curve, continued over a reflectorized post, and ran through the ditch which parallels the highway. The investigating patrolman found 84 feet of single line brake marks on the road surface, which continued an additional 123 feet through the ditch. Thereafter, the automobile was airborne for 15 feet, coming to rest on its top. It was badly damaged.

Plaintiff testified that at approximately 9:00 p.m. she and defendant met two other couples at a restaurant in Richmond where they shared a single bottle of wine as part of their meal. Thereafter the Clarks drove to a Richmond nightclub where defendant consumed an additional two and one-half drinks containing vodka and orange juice. Around 1:45 a.m., they left the nightclub and headed

for south Richmond via the Powhite Parkway. Noticing no impairment in defendant's physical condition, plaintiff did not object to his driving. Once on the parkway, plaintiff closed her eyes and leaned back on the front passenger's seat, detecting nothing unusual until she felt a jerk in the car. When she looked up, she saw the defendant turning the steering wheel to the left to avoid a post in front of the car. She remembered nothing else about the accident.

Defendant, called as an adverse witness, testified that although he had driven east on Powhite Parkway several times prior to the accident, he was unfamiliar with the westbound portion of the highway. He was aware that a toll booth was located close to the point where Powhite merges with Chippenham. Defendant recalled passing through the toll booth on the night of the accident and seeing the sign designating the speed limit at 60 miles per hour. However, he failed to see either the signs indicating the merger with Chippenham or the two signs warning of the ramp for southbound traffic to Chippenham and also limiting the speed to 35 and 30 miles per hour, respectively. He also could not remember passing the northbound exit for Chippenham Parkway. Defendant did recall that immediately prior to the accident he was traveling between 50 and 80 miles per hour and that he was unaware of the exit ramp curve until he saw the reflectorized posts marking its outer boundary. Upon seeing these posts he knew that he had "run out of road."

Defendant admitted that he had consumed a glass of wine and two and one-half drinks of alcoholic beverages on the night of the accident. He further stated that a psychiatrist had warned him not to drink because alcohol, coupled with his underlying emotional problems, impaired his judgment. He denied that he fell asleep prior to the accident, and testified that the automobile, being practically new, had no known defects.

The issues presented on this appeal are whether plaintiff's evidence sufficiently raised jury questions as to gross negligence and proximate cause.

The general rule is that gross negligence becomes a question of law only when reasonable men cannot differ.

". . . When the sufficiency of a plaintiff's evidence is challenged by a motion to strike, the trial court should resolve any reasonable doubt as to the sufficiency of the evidence in plaintiff's favor and should grant the motion only when 'it is conclusively apparent that

plaintiff has proven no cause of action against defendant', . . . or when 'it plainly appears that the trial court would be compelled to set aside any verdict found for the plaintiff as being without evidence to support it.' . . . This is so because when a judgment based on a granted motion is reversed on appeal, a new trial must be conducted; when a plaintiff's verdict follows a denied motion, whether the verdict is set aside or confirmed by judgment below, this court may enter final judgment, thereby obviating the delay and expense of a new trial." *Williams* v. *Vaughan*, 214 Va. 307, 309, 199 S.E.2d 515, 517 (1973).

We have many times defined gross negligence as that degree of negligence which shows indifference to others and utter disregard of prudence, amounting to a complete neglect of the guest's safety. "*It must be such a degree of negligence as would shock fair minded men although something less than willful recklessness.*" *Ferguson* v. *Ferguson*, 212 Va. 86, 92, 181 S.E.2d 648, 653 (1971). We have also said that, in addition to excessive speed, one of the more common indicia of gross negligence is the host-driver's deliberate inattentiveness to his duties in the operation of his automobile. *Smith* v. *Prater*, 206 Va. 693, 698, 146 S.E.2d 179, 182 (1966); *McDowell* v. *Dye*, 193 Va. 390, 398, 69 S.E.2d 459, 465 (1952).

Applying these principles, we have no difficulty in finding that plaintiff's evidence presented a jury question on the issue of gross negligence. That evidence tended to show that defendant either was inattentive to, or completely disregarded, four properly erected highway signs which warned that the Powhite Parkway was about to merge with Chippenham Parkway, and required substantial reduction in speed to negotiate the exit ramp. These signs were prominently posted for some three-tenths of a mile along the highway leading to the scene of the accident. The evidence further indicated that defendant was driving between 20 and 50 miles per hour in excess of the speed limit when he entered the exit ramp and that he was totally unaware of the ramp until he realized that he had "run out of road." Defendant denied that he fell asleep or that the automobile was defective. From this evidence, the jury might reasonably have concluded that defendant's excessive speed, his utter disregard of numerous highway warning signs, and his partaking of alcoholic beverages under the circumstances amounted to a complete neglect of his guest's

safety. *See Ketchmark* v. *Lindauer, Adm'r,* 198 Va. 42, 45, 92 S.E.2d 286, 288-89 (1956).

■ Defendant nonetheless argues that this case should be controlled by the rule requiring denial of recovery when there has been no showing as to how and why an accident took place. *See Brennan* v. *Kaylor,* 213 Va. 33, 35, 189 S.E.2d 371, 372 (1972); *McFadden* v. *Garrett,* 211 Va. 680, 683, 179 S.E.2d 482, 485 (1971). Here the physical facts and the defendant's own testimony tend to show how and why the accident occurred. Thus, it was for the triers of fact to say whether defendant's utter disregard of a series of warning signs, his excessive rate of speed onto a curved exit ramp, and his alcoholic condition proximately caused the accident. *See Arnold, Adm'r* v. *Reynolds, Adm'x,* 215 Va. 431, 433, 211 S.E.2d 46, 47 (1975); *Pennington* v. *Beamon,* 211 Va. 493, 496, 178 S.E.2d 511, 513 (1971).

For the reasons stated, the judgment of the trial court is reversed and the case is remanded for a new trial.

*Reversed and remanded.*