# Richmond

V<small>ERNON</small> W<small>ATERS</small> v. E<small>DWARD</small> H<small>OLLOMAN</small>.

March 5, 1976.

Record No. 750288.

Present, All the Justices.

*Daniel W. Wilkinson, Jr. (Bennett L. Stein; West, Wilkinson, Stein & West, on brief), for plaintiff in error.*

*Thomas L. Woodward, Jr., for defendant in error.*

H<small>ARMAN</small>, J., delivered the opinion of the court.

Edward Holloman (Holloman or plaintiff) sued Vernon Waters (Waters or defendant) in the trial court for personal injuries which the plaintiff sustained in an automobile crash. The jury returned a verdict for Holloman against Waters for $35,000 and the trial court entered judgment on the verdict.

The single issue here is whether the evidence sustains the jury's finding that Waters' negligence was the proximate cause of the plaintiff's injuries. Since the jury found for the plaintiff, the evidence and all proper inferences therefrom must be stated and viewed in the light most favorable to him.

The accident occurred on November 4, 1972, around 10:30 p.m. on U.S. Route 460 in Isle of Wight County, approximately one and three-

tenths miles east of Windsor. U.S. Route 460 at the crash scene is a four-lane east-west highway. The two 12 foot eastbound lanes of the highway are separated from the two 12 foot westbound lanes by solid double lines only. The road is straight and level for at least three-tenths of a mile west of the scene of the accident.

The investigating officer, Trooper W. G. Massengill, arrived at the site at approximately 10:40 p.m. while on routine patrol. He found the defendant "running in a rather hysterical way around 460, around the three injured persons that were laying on the highway around the automobiles. He was crying. He was bleeding profusely from the nose, and he was screaming that the accident was not his fault." The officer detected a strong odor of alcohol about the defendant's person. Trooper Massengill further testified: "I placed [the defendant] against my car and asked him to stay there so I could attend to the other injured, and when I would leave him unattended, he would walk off from the car." The officer related that Waters was "very unsteady on his feet" and that it was necessary to "restrain him" because of his condition. When Massengill placed the defendant in the back seat of the police car, Waters fell from the seat to the floor of the car and it was necessary for the officer to assist the defendant in regaining the car seat.

Other officers were summoned and soon arrived at the crash site to assist Trooper Massengill. From his investigation of the accident site that night, Trooper Massengill testified that he ascertained that three cars had been involved in two separate crashes. The first crash occurred between the defendant's eastbound vehicle and the vehicle driven by the plaintiff. Shortly thereafter another eastbound vehicle operated by Martha S. Foster slid into the Waters vehicle which was stopped partly in each of the eastbound lanes of the highway. The officer testified that he found the Holloman car, which was not involved in the second crash, partly on the north shoulder and partly on the pavement of the right westbound lane of Route 460 facing west, towards Windsor.

The trooper observed a large amount of broken glass and debris mostly in the left eastbound lane and left westbound lane. Some debris was also observed in the right eastbound lane. While the trooper observed some markings on the highway that night, he did not attempt to measure and record them until the following morning after daylight.

When he returned to the scene of the accident the following morning the trooper found a "single darkened braking mark" in the right

eastbound lane, which was approximately 60 feet in length. This mark, which was near, parallel to and south of the line dividing the two eastbound lanes, ran to a point where the trooper observed some scraped or dented marks in the road surface. From this point the trooper observed a "double braking mark," with one mark beginning in each of the eastbound lanes, which deviated toward the right for approximately 69 feet and ended at the point where he found Waters' car the night before.

Trooper Massengill also observed "pressure marks . . . real light tire marks" which began in the vicinity of the scrape or dent marks in the road surface, crossed the westbound lanes and ended where the Holloman vehicle was sitting the preceding night.

The trooper's testimony and the photographic exhibits introduced at trial show that the left rear door and left rear fender of Holloman's four door car were damaged in the initial collision. The entire front of the Waters car was demolished as a result of striking Holloman's vehicle.

Holloman testified that he and his two guests, Benjamin Holloman and Estelle Holloman, were proceeding east on Route 460 enroute to a restaurant in Suffolk when the wreck occurred. He told the jury that he was proceeding in the right eastbound lane at "about 50 or 55" miles per hour. He said he did not stop or slow down before the crash nor did he see Waters' car. He related that Trooper Massengill interviewed him at the hospital the following day. When asked "how the accident happened", the plaintiff "told him I thought I had a flat tire." When Massengill informed Holloman that there were no flat tires on Holloman's car and that the trooper believed Holloman was making a U-turn, plaintiff denied that he was making such a turn. Holloman testified that, after being pressed by the trooper, he told the trooper "[m]aybe I was turning around." The final question asked plaintiff by his counsel was: "Do you know anything about the accident except what somebody has told you?" The plaintiff's response was "[n]o sir."

Trooper Massengill also testified about the interview at the hospital on November 5, 1972. As recorded by the trooper, plaintiff first stated, when asked to relate how the accident occurred, "I was in the center lane going towards Suffolk. Something happened. I think a tire blew. I don't know anything else, it was done so quick."

The trooper's notes then indicate that he asked the following questions and that Holloman responded with the following answers.

"Q. The car that hit you, did it come from behind you?
"A. I don't know, I just lost control of the car and got hit.
"Q. Had you been drinking?
"A. Yes, one beer.
"Q. You weren't turning around in the road, were you?
"A. I just don't know, I don't think so.
"Q. You don't know what you were doing?
"A. Yes, I was turning around in the road. We decided to go back to Ivor.
"Q. Did you see any cars coming?
"A. No, sir.
"Q. Did you turn around in the road or did you use a driveway?
"A. I was turning around in the road."

Benjamin Holloman, a guest in plaintiff's car, testified that he had "dozed off to sleep" while enroute to the restaurant in Suffolk and that he remembered nothing else until he regained consciousness in a hospital the following morning.

Estelle Holloman, the other guest in plaintiff's car, testified that she was seated between the plaintiff and Benjamin Holloman on the front seat of plaintiff's automobile. She related that to the best of her recollection plaintiff was driving in the right eastbound lane in the direction of Suffolk before the crash. When asked if she recalled "the accident itself" she responded, "[n]o, I don't remember." She did testify that Holloman, whose speed was about 55 miles per hour, did not slow down, stop or apply his brakes before the crash. She also said that the plaintiff did not "leave" the right eastbound lane prior to the crash.

The only other witnesses who testified concerning the accident were the defendant and David Johnson, who was the only other occupant of defendant's car.

Johnson testified that the defendant was driving toward Suffolk in the left eastbound lane at approximately 45 miles per hour. After the defendant rounded a curve, Johnson observed plaintiff's unlighted car 30 or 35 yards ahead with its two right wheels on the right shoulder of the road. While he observed no signals from the plaintiff, the witness saw the plaintiff's car suddenly start to make a U-turn in front of defendant. Johnson related that Waters applied his brakes and "started sliding" before the front of his car collided with the left side of the Holloman vehicle.

Johnson testified that he had been with the defendant for approxi-

mately one and one-half hours prior to the wreck. During that time he observed the defendant drink "one beer". He testified that the defendant appeared "normal" prior to the crash, but that he became nervous and upset afterwards.

Waters testified that he was driving his car in the center or left eastbound lane of Route 460 toward Suffolk at a speed of about 45 miles per hour. He related that he drove into the center lane to pass the Foster car "on the outskirts of Windsor" and continued to drive in the center lane until the crash. As he proceeded toward Suffolk Waters said his headlights were on "low beam". He testified that he was suddenly confronted by the plaintiff's unlighted vehicle which was stopped "crossways" in Waters' lane of travel. The defendant testified that he had consumed one bottle of ale earlier in the evening. In addition to the injury to his nose, the defendant said that his stomach and his legs struck the steering wheel in the crash. While conceding that he was having "trouble standing" when Trooper Massengill arrived at the scene, Waters said this condition was caused by his injuries and was not due to drinking.

What we said in *Weddle, Admx.* v. *Draper*, 204 Va. 319, 322, 130 S. E. 2d 462, 465 (1963), seems particularly appropriate here:

"Negligence cannot be presumed from the mere happening of an accident. The burden is on the plaintiff who alleges negligence to produce evidence of preponderating weight from which the jury can find that the defendant was guilty of negligence which was a proximate cause of the accident. The evidence produced must prove more than a probability of negligence and any inferences therefrom must be based on facts, not on presumptions. It is incumbent on the plaintiff who alleges negligence to show why and how the accident happened, and if that is left to conjecture, guess or random judgment, he cannot recover . . ."

Here, while the jury would have been justified in finding from the evidence that the defendant was under the influence of alcohol, that fact does not, in the absence of some evidence of why and how the accident occurred, support an inference that Waters' intoxication was a proximate cause of the accident. Nor does the plaintiff's evidence that, prior to the crash, he was driving at a lawful speed, in his proper lane of travel, and that he neither stopped, slowed his speed, applied his brakes nor turned from his lane, establish why and how the crash occurred.

Since the evidence adduced shows no more than a possibility of

negligence which might have been a proximate cause of the crash, it follows that the jury's verdict was necessarily based upon conjecture, guess or random judgment. We therefore reverse and enter final judgment here for the defendant.

*Reversed and final judgment.*