## Richmond

### FRANK DUFFER, ADMINISTRATOR, ETC. v. W. E. NEWMAN, SHERIFF, ADMINISTRATOR, ETC.

November 24, 1976.

Record No. 751109.

Present, All the Justices.

*Frank M. Slayton (W. Byron Keeling; Vaughan and Slayton, on brief), for plaintiff in error.*

*Michael W. Moncure, III (Moncure & Cabell, on brief), for defendant in error.*

Per Curiam.

This is a gross negligence case in which the administrator of Charlie Wayne Duffer, the deceased guest-occupant, recovered a jury verdict in the court below against the estate of Earl Danny Camp, the deceased host-driver. We review the action of the trial court in setting aside the verdict of the jury upon the ground that "there was insufficient evidence introduced in the trial of this case to carry the issue of defendant's gross negligence to the jury. . . ."

This action grew out of a single car accident which occurred about midnight on June 27, 1972 in Charlotte County. It involved a Chevrolet automobile being driven by Earl Danny Camp in a westerly direction along Route 47, a blacktop highway. All three occupants of the automobile, Camp, Duffer and Charles Eugene Daniel, were killed in the accident.

Virginia State Trooper R. B. Whitley testified that the weather was clear and that the road surface was paved, dry and free of defects. The speed limit was 55 miles per hour. As one proceeds west on Route 47 to the point of the accident there is a slight grade or hill, and the road curves to the right. Trooper Whitley arrived at the scene of the accident about 2 a.m. He testified that there were no brake marks or marks of any kind on the hard surface of the highway. He said that he was able to determine that the car left the road on the left side and traveled a total distance of 114 feet from the paved surface of the road before it wrecked upon striking several trees. The only marks found by the trooper between the road surface and the trees were two marks on the ground, four feet in length. He testified that these marks were made 76 feet 2 inches from the point where the vehicle left the pavement and that they were 33 feet 10 inches from the trees. The trooper found scars on the trees and bark missing therefrom, some five to eight feet above ground level. The automobile was virtually demolished in the collision. Its frame and drive shaft were "broken in two", and its engine was driven back into the front seat. Because of the condition of the car no effort was made to determine whether there had been any malfunction of the vehicle, or if there were any discernible mechanical defects.

The only evidence introduced to establish gross negligence, other than the testimony of the trooper and the photographs, was the testimony of Mrs. Mary D. Hensley who, after leaving work at midnight, was driving home in an easterly direction on Route 47. She said that as she "was coming down this highway . . . I really don't know the distance how far I was from this, I saw a car lights in the darkness of the night. And I dimmed my lights, and just in a few seconds I saw a light, car light go into some trees just like you throw a ball into the trees".

Mrs. Hensley was asked to "explain to the jury what you observed after the headlights came into your line of vision", and she responded: "I just saw some lights dash right into the woods is all that I saw." This witness, who said she had been driving some 26 years and "had an opportunity to observe headlights on other vehicles moving on the highway towards her at night", was asked if she had formed an opinion as to the rate of speed this particular vehicle was traveling when it went into the woods.

She answered: "It was a real high speed. I would say at least 80 miles per hour." She said: "At least 80, because it was real fast. It went in real fast." Under repeated questioning Mrs. Hensley continued to say that she "saw the lights dash through the trees" and that "with the rate it hit the woods, it had to be around that speed, because it was real fast". The witness was unwilling to estimate the distance she was from the automobile when she saw the lights. She said: "I don't know exactly, but it wasn't too far. It happened — when I saw the lights, it happened in seconds, anyway. I really couldn't say."

Mrs. Hensley did not stop at the scene but did go to the home of a friend and request that the rescue squad and a trooper be called.

Appellant argues that: "This case is clearly unlike those cases in which all of the parties are dead amidst great destruction and there were no witnesses to how or why the event occurred." He says that Mrs. Hensley's testimony makes the question of gross negligence an issue for the jury. Appellee says the real issue is "what caused the defendant's vehicle to go out of control and cross over to the left side of the road and into the woods".

In a well considered opinion the trial judge, after reviewing the pertinent authorities, concluded that:

"[I]nasmuch as the evidence here shows only excessive speed and an absence of alcohol and an absence of warning of any type and an absence of inattention, and inasmuch as the evidence fails to establish why and how the accident was caused, I feel constrained to sustain the motion to set aside the jury verdict and I do so hold."

We agree with the conclusion reached by the trial judge. Giving the testimony of Mrs. Hensley full weight, it, together with the physical facts, would justify the inference that the Camp automobile was proceeding at a rapid rate of speed. However, the evidence fails to establish that the speed of the car was so great as to constitute gross negligence. True, the Camp automobile was virtually demolished. However, in *Richter* v. *Seawell,* 183 Va. 379, 32 S.E.2d 62 (1944), we recognized that if an automobile traveling at 55 miles per hour or less gets out of control it may be demolished when it strikes an immovable object. And unlike *Arnold, Adm.* v. *Reynolds, Adm'x,* 215 Va. 431, 211 S.E.2d 46 (1975), where, in addition to excessive speed,

the evidence established the impaired condition of the host driver, here we only have evidence of speed, and such speed is not shown to be the proximate cause of the accident.

It is clear that Camp lost control of the vehicle he was driving at or about the time Mrs. Hensley observed the lights of the car. However, there is a total lack of evidence as to what caused him to lose control. We cannot guess or speculate that excessive speed was the cause. We cannot presume negligence from the mere happening of the accident. The party who affirms negligence must establish more than the probability of a negligent act. This is but another case where a plaintiff has failed to meet the burden imposed on him to show how and why the accident occurred. *See, e.g., Waters* v. *Holloman,* 216 Va. 726, 222 S.E.2d 549 (1976); *Brennan* v. *Kaylor,* 213 Va. 33, 189 S.E.2d 371 (1972).

The judgment of the trial court is

*Affirmed.*