## Richmond

# HENRIETTA W. PETRESS, ADMINISTRATRIX, ETC.

### v.

# RICKY EDWARD SEAY

April 20, 1979.

Record No. 771344.

Present: All the Justices.

*James W. Haskins (R. Reid Young, Jr.; Young, Kiser, Haskins, Mann, Gregory & Young, Ltd.,* on brief), for appellant.

*James A. L. Daniel (Meade, Tate & Daniel,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

Charles H. Wade was killed when the automobile which he was operating was struck by an automobile driven by Ricky Edward Seay. Wade's personal representative brought this wrongful death action against Seay in the trial court. In a jury trial the jury returned a verdict finding both Seay and Wade negligent. The trial court overruled plaintiff's motion to set aside the verdict and entered judgment for defendant. On appeal, the personal representative contends that the trial court erred in granting contributory

negligence instructions, in granting conflicting instructions, and in permitting an expert defense witness to answer a certain hypothetical question.

The accident occurred at approximately 10:00 p.m. on July 29, 1976, when Wade's 1968 Buick sedan was struck, while crossing from east to west the southbound lanes of U. S. Route 220 at its intersection with State Route 687, by Seay's 1970 Ford sedan which was proceeding south on Route 220. State Trooper O. G. Reid, the investigating officer, arrived on the scene a few minutes after the accident. He found the Ford heavily damaged in front, and the Buick heavily damaged on its right side. Seay and his passenger, Kitty Moore, were injured; Wade and his passenger, Sarah Penn Finney, were dead. Both vehicles were totally demolished.

Route 220, a four-lane divided highway extending in a generally north and south direction, had a posted speed limit of 55 miles per hour. Approaching the intersection, there was a third southbound lane for traffic turning left into what was described as "old" Route 220 and a third northbound lane for traffic turning left into Route 687. The elevation of the northbound lanes of Route 220 was lower than that of the southbound lanes. Trooper Reid testified that a motorist northbound on Route 220, who stopped at night at the intersection, either in the left turn lane or in the cut in the median strip, for the purpose of crossing the southbound lanes of Route 220, could see the light of southbound vehicles for a distance of approximately 450 feet. According to Reid's testimony, when he questioned Seay at the hospital about the accident, Seay said that he was driving at least 60 miles per hour the last he remembered, but denied driving 100 miles per hour as one or more witnesses had reported.

Patsy Prillaman testified that she was sitting in her car at a gasoline station on Route 220 about one mile north of the accident site when she saw the Seay car pass the station at "[n]ot under 100" miles an hour, an estimate of speed based upon her having ridden "in cars that raced". Shortly thereafter, she heard a crash and proceeded to the scene of the collision.

Joseph Fromme testified by deposition that as he was driving south on Route 220 at 55 miles per hour, approximately three-tenths to four-tenths of a mile north of the accident site, Seay passed him "more than doubling" Fromme's speed. Fromme saw Seay's brake lights come on as the Ford disappeared over the crest

of a hill. When Fromme came over the same rise he saw that an accident had occurred.

At the conclusion of plaintiff's evidence defendant moved to strike the evidence on the ground that it failed to show what caused the accident. The trial court, in overruling the motion, said that there was evidence that Seay was driving at an excessive speed just prior to the accident and that it was a jury issue whether the speed proximately caused the collision.

Ronald E. Kirks, an engineer and land surveyor, who was a consultant in the reconstruction of accidents, was called as an expert witness for Seay. He had conducted tests and made observations to determine sight distances from the intersection. He found that in daylight he could see a target placed at the height of headlights on Route 220 at a distance of 1,480 feet north of a point in the crossover through the median strip. At night he could see the glare of headlights on Route 220 1,700 to 1,800 feet north of the same point.

Over strenuous objection that there was no evidence to justify the question, Kirks was asked whether he had determined the speed at which a vehicle with an automatic drive train would be traveling at the end of one mile, based upon the assumptions that the vehicle was going 100 miles per hour at the start of the mile and that the driver at that time removed his foot from the accelerator and let the vehicle slow down without applying the brakes. Kirks replied that on a level road the speed at the end of the mile would be between 10 and 20 miles per hour.

Seay, testifying in his own behalf, said that he had been driving south on Route 220 just prior to the accident at 65 to 70 miles per hour but that he had slowed, at the request of his passenger, to approximately 60 miles per hour as he approached the intersection. When he first saw the Wade car it was "moving through the median strip, in a matter of no time". Seay "saw lights bob out and it was right in front" of him. Seay's vehicle was then about 60 or 70 feet from the crossover and traveling in the right-hand southbound lane. Seay tried to swerve and apply his brakes but did not have time "to do anything". He admitted that he was going "just slightly" over the speed limit, probably 60 miles per hour, as he went through the intersection. Seay insisted that Wade "just pulled right out in front" of him, and that the lights of the Wade vehicle "bobbed" from the median strip which indicated that Wade was

going up the incline across the southbound lanes of Route 220 into Route 687.

At the conclusion of the evidence, the trial court granted various instructions proffered by counsel for plaintiff, including Instructions 1 and 3. Instruction 1[1] informed the jury that in the absence of evidence to the contrary, Wade was presumed to have properly stopped his motor vehicle and looked for oncoming traffic before entering the intersection. Instruction 3[2] instructed the jury that Seay was guilty of negligence as a matter of law in that, by his own admission, he was operating his automobile at 60 miles per hour at the time of the collision. The jury was to determine whether this negligence was a proximate cause of the accident.

The granting of Instruction 3 rendered harmless any error committed by the trial court in permitting Kirks, the expert witness, to answer the question as to deceleration of a vehicle over a measured mile. The question was asked, as Seay's counsel concedes, to neutralize the effect of the testimony of Prillaman and Fromme that Seay was driving at 100 miles per hour or more a short distance north of the accident scene. The question was not based upon any evidence then in the record, or thereafter adduced, and was irrelevant. However, Instruction 3, granted over Seay's objection, established as the law of the case that Seay was negligent in exceeding the speed limit, and the jury's verdict established that his negligence was a proximate cause of the collision. Therefore, the personal representative was not prejudiced by the hypothetical question on deceleration or the answer thereto.

---

[1]THE COURT INSTRUCTS THE JURY, that in the absence of evidence to the contrary, the Plaintiff's decedent, Charles H. Wade, is legally presumed to have properly stopped his motor vehicle and looked for oncoming traffic before he entered the intersection where the collision occurred.

THE COURT FURTHER INSTRUCTS THE JURY, that the Plaintiff's decedent, Charles H. Wade, had a right to assume that the Defendant was operating his motor vehicle within the lawful speed limit, unless it was, or in the exercise of ordinary care should have been, reasonably apparent that the Defendant was not operating his motor vehicle within the lawful speed limit.

[2]THE COURT INSTRUCTS THE JURY, that the Defendant was guilty of negligence as a matter of law, in that, he was driving his automobile at the time and place in question at a speed of 60 m.p.h. by his own admission, the speed limit then and there being 55 m.p.h.

And if you further believe from such evidence that any such negligence was a proximate cause of the collision, then, unless the Plaintiff was guilty of negligence which proximately contributed to cause the collision, you shall find your verdict in favor of the Plaintiff.

██ The trial court granted various instructions proffered by defendant, including Instructions E, F, G, H and I relating to contributory negligence. Plaintiff argued below, as she argues on appeal, that there was no evidence of negligence on the part of Wade on which any contributory negligence instructions could be based. The trial court rejected this argument, ruling that the question for determination was whether Wade maintained a proper lookout. We agree with this ruling.

The cases upon which plaintiff relies involved single car accidents and are inapposite. In *Duffer v. Newman*, 217 Va. 415, 229 S.E.2d 860 (1976), the three occupants of a car which went off the road and struck trees were killed in the crash. A witness testified that she saw the lights of the vehicle go into the trees, and estimated the speed of the car as at least 80 miles per hour. We agreed with the ruling of the trial court setting aside a verdict based upon the gross negligence of the deceased driver of the automobile. There was evidence only of excessive speed which was not so great as to constitute gross negligence, and was not shown to be the proximate cause of the accident.

In *Brennan v. Kaylor*, 213 Va. 33, 189 S.E.2d 371 (1972), five gross negligence cases were consolidated. The accident giving rise to the actions occurred when the defendant's car ran off the highway and traveled approximately 330 feet before coming to rest. The only evidence that was adduced was that the mechanical condition of the car was good and the driver was aware of no defects in the highway. We held that this evidence failed to show any gross negligence and we reversed the judgments for plaintiffs and entered judgment for the defendant.

The driver of the automobile in *McFadden v. Garrett*, 211 Va. 680, 179 S.E.2d 482 (1971), was killed when the vehicle left the highway and struck a tree. The owner of the car, who was injured while riding as a passenger, sued the driver's estate for damages and obtained a jury verdict on which the lower court entered judgment. We reversed, holding that there was no evidence of negligence. Neither passenger could remember anything about the accident, and there was no evidence of drinking, excessive speed, or reckless driving.

On the other hand, in *Arnold, Adm. v. Reynolds, Adm'x*, 215 Va. 431, 211 S.E.2d 46 (1975), we upheld a judgment awarding damages to the personal representative of a deceased passenger,

where there was evidence that the condition of the host-driver was impaired by alcohol when he wrecked his vehicle at high speed in the median strip of an interstate highway. We held that the impaired condition of the driver supplied the additional evidence, missing in *McFadden,* to establish the cause of the accident, so that jury issues were presented as to gross negligence and proximate cause. To the same effect are *Clark* v. *Clark,* 216 Va. 539, 221 S.E.2d 123 (1976), and *Penington* v. *Beamon,* 211 Va. 493, 178 S.E.2d 511 (1971).

In the present case, Seay was entitled to have instructions given to the jury in accordance with his theory as to the cause of the accident, provided there was any evidence to support his theory. His defense was based upon his contention that Wade negligently failed to maintain a proper lookout and that this negligence was a proximate cause of the accident. Seay's own testimony makes Wade's lookout a jury issue. When Seay first saw Wade, the decedent was passing through the median crossover 60 to 70 feet away and continuing across the southbound lanes of Route 220. There was evidence that Seay's car lights could have been seen 450 to 1,800 feet from the crossover. Thus, it was an issue of fact whether Wade, as a reasonable man, saw or in the exercise of ordinary care should have seen Seay's vehicle in time to avoid entering the highway in the face of the onrushing car. *See Powell* v. *Nichols,* 209 Va. 654, 166 S.E.2d 243 (1969); *Hagan* v. *Hicks,* 209 Va. 499, 165 S.E.2d 421 (1969). Unlike *Duffer* and the other cases cited by plaintiff, the evidence in the present case shows more than the mere happening of an accident. Here sufficient evidence was introduced to support the finding that the accident was caused by the negligence of both Wade and Seay.

We find no merit in plaintiff's contention that the trial court committed reversible error in granting inconsistent instructions. Plaintiff says that Instruction 1, which stated that Wade, in the absence of evidence to the contrary, was presumed to have properly stopped and looked for oncoming traffic before entering the intersection, is inconsistent with Instructions E, F, G and H which permitted the jury to find Wade guilty of negligence if he failed to exercise ordinary care to keep a proper lookout. It is true, as plaintiff says, that there is no evidence in the record that Wade failed to stop. When Seay, the only eyewitness to testify, first saw the Wade car, it was moving, but it could have stopped before Seay reached a point 60 to 70 feet away and first saw it in front of him.

Although there was no evidence that Wade stopped and looked, Instruction 1 established the presumption Wade did take such actions. The instruction, however, did not establish a conclusive presumption.

The jury reasonably could have found that the presumption was rebutted by evidence tending to show that Wade did not keep a proper lookout, or that even if he did stop and look he failed to see what an ordinarily prudent person would have seen under the circumstances. It was for the jury to determine whether Wade exercised ordinary care, and the contributory negligence instructions presented this issue in accordance with Seay's theory.

The judgment of the trial court will be affirmed.

*Affirmed.*