# MICHAEL KRAIG GOSSETT, ETC., ET AL.

## V.

# JEFFREY LAWRENCE JACKSON

Record No. 941160

April 21, 1995

Present: All the Justices

*Allen J. Gordon (Erik P. Gordon; Robert B. Kendall,* on briefs), for appellants.

*Benjamin P. Lynch, Jr. (Harris, Fears, Davis, Lynch & McDaniel,* on brief), for appellee.

JUSTICE HASSELL delivered the opinion of the Court.

In this appeal of a judgment in a negligence action arising out of the operation of an automobile, we consider whether the plaintiffs presented sufficient evidence to establish a *prima facie* case of negligence on the part of the defendant.

Michael Kraig Gossett, an infant, by his mother and next friend, Carolyn Gossett, and Carolyn Gossett, individually, filed this action against Jeffrey Lawrence Jackson. The plaintiffs alleged that Michael was injured as a result of Jeffrey's negligence. The case was tried before a jury. After the plaintiffs rested their case, the defendant informed the court that he did not intend to present any evidence and moved to strike the plaintiffs' evidence. The trial court granted the defendant's motion, and we awarded the plaintiffs an appeal.

In reviewing the trial court's decision to strike the plaintiffs' evidence, we must consider the evidence and all reasonable inferences deducible therefrom in the light most favorable to the plaintiffs. Furthermore, any reasonable doubt as to the sufficiency of the evidence must be resolved in favor of the plaintiffs. *Rizzo* v. *Schiller,* 248 Va. 155, 157, 445 S.E.2d 153, 154 (1994).

About 9:30 p.m. on July 20, 1992, Jill Fraiser approached Michael, then 14 years old, and Jeffrey, then 17 years old, as the boys were working on Jeffrey's truck in the driveway of a home owned by Jeannie Ross. Ross was out of town, and Michael was "housesitting" for her. Jill lived near the Ross home. Michael had seen Jill in the neighborhood, but neither he nor Jeffrey was personally acquainted with her.

Jill asked Michael and Jeffrey if they would remove a radio and speakers from a Ford Escort that belonged to her boyfriend, who

had moved to California. The boys removed the radio and speakers and took them to Jill's house.

Jill told the boys that if they would remove the tires from the car, then they "could pretty much do with [it] what [they] wanted" because she did not want the vehicle. Apparently, a lending institution was going to repossess the car, and Jill did not want the car, which was unlicensed, near her home. The boys discussed the possibility of driving the car to a local park and "hiding" it. Unbeknownst to either boy, many of the mechanical parts of the car beneath the hood were held together by nylon ropes and bungee cords.

Later that night, Jeffrey departed, and Michael went to sleep in the Ross home. Sometime after 3:00 a.m., Jeffrey returned to the Ross home, awakened Michael, and suggested that they "go for a ride." Jeffrey got in the driver's seat of the car, and Michael rode in the front passenger seat. Even though the posted speed limit was 25 m.p.h., Jeffrey drove the car at speeds between 45 and 60 m.p.h. Jeffrey did, however, slow the car down to stop and yield at intersections. Jeffrey was also "red lining" the car. According to the evidence, a driver of a car "red lines" it by "trying to get the R.P.M.s over to the red mark on the tachometer."

On at least ten occasions, Michael pleaded with Jeffrey to drive slower. Jeffrey refused to do so. Michael became hysterical and screamed at Jeffrey, asking him to drive slower, but Jeffrey still refused to do so.

After Jeffrey had been driving the car about three to four minutes, he drove the car on Five Forks Road in Virginia Beach. He "red lined" the car once more, and Michael said, "Jeff, stop, stop for real, Jeff calm down, stop, you don't have to go this fast. . . . Jeff, for real, chill, stop." Michael testified that his pleas "[r]eally didn't seem to phase [Jeff] that much."

Suddenly, the car began to "weave all over the road." Jeffrey was driving between 50 and 60 m.p.h. when the car began to "weave." Michael screamed at Jeffrey and told him to slow down. Michael said, "Jeff, man, you have got to stop now." Jeffrey looked at Michael and said, "it is not me," and Jeffrey took his hands off the steering wheel. Immediately after Jeffrey had removed his hands from the steering wheel, the car hit a telephone pole, slid on its roof and side, flipped over, and came to rest on its wheels.

Sergeant Steven C. Smith, a police officer, inspected the car. He observed that many parts of the car were held together with nylon twines which he referred to as ropes. He was of the opinion that a majority of the "areas" of the car beneath the hood had been held together by ropes, which severed during the accident. Sergeant Smith testified as follows:

Q: Sergeant Smith, the structural integrity of the vehicle itself, you would have frames that are rusting, and unless they are sheared or something wouldn't have any effect; isn't that true?

A: There were problems with the structural integrity of this vehicle.

. . . .

Q: Now, was it anything to indicate to you that the vehicle was — the condition of the vehicle would affect the speed that the vehicle would be going at?

A: No, sir. I didn't see any indication of anything that would have affected that.

The plaintiffs argue that the trial court erred by granting the defendant's motion to strike their evidence. The plaintiffs contend that they presented evidence from which a jury could infer that the defendant's negligence was a proximate cause of the accident. The defendant contends, however, that the accident may have occurred because the car was mechanically unsound. Thus, the defendant says that the plaintiffs failed to prove how and why the accident occurred. We disagree with the defendant.

Our decision is controlled by familiar principles:

Negligence cannot be presumed from the mere happening of an accident. The burden is on the plaintiff to produce evidence of preponderating weight from which the trier of fact can find that the defendant was guilty of negligence which was a proximate cause of the accident. The evidence must prove more than a probability of negligence. The plaintiff must show why and how the accident happened. And if the

cause of the accident is left to conjecture, guess, or random judgment, the plaintiff cannot recover.

*Sneed* v. *Sneed*, 219 Va. 15, 17, 244 S.E.2d 754, 755 (1978).
██ Here, the plaintiffs presented evidence from which the jury could have inferred that Jeffrey's negligence was a proximate cause of the accident. For example, Jeffrey had previously stopped the car at intersections minutes before the accident occurred and the jury could have found that but for Jeffrey's excessive speed of 60 m.p.h., he would have been able to use the brakes to stop the car and, thus, prevent the accident. The jury could have also found that the car's mechanical condition was not a proximate cause of the accident because Sergeant Smith testified that the condition of the car did not affect its speed. Furthermore, the jury could have found that Jeffrey was negligent in his operation of the car because he took his hands off the steering wheel of the car as it was "weaving" and traveling at a speed of 60 m.p.h. immediately before the collision.

The defendant argues that our decision in *Duffer* v. *Newman*, 217 Va. 415, 229 S.E.2d 860 (1976), is controlling here. In *Duffer*, we reviewed "the action of the trial court in setting aside the verdict of the jury upon the ground that 'there was insufficient evidence introduced in the trial of this case to carry the issue of defendant's gross negligence to the jury.'" 217 Va. at 415, 229 S.E.2d at 861. We held that evidence the defendant's car in *Duffer* was traveling at 80 m.p.h. failed to establish gross negligence. And, as we have recently said:

> Gross negligence is defined as "that degree of negligence which shows [such] indifference to others as constitutes an utter disregard of prudence amounting to a complete neglect of the safety of [another]. It must be such a degree of negligence as would shock fair minded [people] although something less than willful recklessness." *Ferguson* v. *Ferguson*, 212 Va. 86, 92, 181 S.E.2d 648, 653 (1971) (emphasis omitted).

*Meagher* v. *Johnson*, 239 Va. 380, 383, 389 S.E.2d 310, 311 (1990).
██ The defendant's reliance upon *Duffer* is misplaced. Here, unlike *Duffer*, the plaintiffs are not required to present evidence of gross negligence; they are merely required to present sufficient evi-

dence to establish simple negligence. Code § 8.01-63. We have defined simple negligence as the failure to exercise "that degree of care which an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury to another." *Griffin v. Shively*, 227 Va. 317, 321, 315 S.E.2d 210, 212-13 (1984). We believe that under the facts and circumstances of this case, the plaintiffs have presented sufficient evidence that would permit a jury to find that the defendant was negligent and that his negligence was a proximate cause of the plaintiffs' damages.

Next, the plaintiffs argue that the trial court erred by failing to enter summary judgment on their behalf. We disagree. Under the facts and circumstances of this case, a jury question exists regarding the proximate cause of the accident. At a trial on the merits, a jury could find that the condition of the car, as opposed to the defendant's negligence, caused the accident. Accordingly, we will reverse the judgment and remand this case for a new trial.

*Reversed and remanded.*