# Richmond

## W. D. ARMSTRONG AND L. H. WIGGINS V. ELLA MAE ROSE, ADM'X, ETC.

April 28, 1938.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Saunders & Hutton* and *M. Anderson Maxey,* for the plaintiffs in error.

*Drewry* and *Cromwell* and *Charles B. Godwin, Jr.,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This is an action brought by Ella Mae Rose, administratrix of Shirley H. Rose, deceased (hereinafter referred to as the plaintiff), to recover damages for the wrongful death of the intestate, in a collision between an automobile truck he was driving and an automobile truck which was owned by W. D. Armstrong and operated by his agent, L. H. Wiggins (hereinafter referred to as the defendants).

The collision occurred on the 12th of February, 1937, sometime after dark on that evening, at or shortly after 6:26 o'clock. The scene of the accident was in the right-hand or south traffic lane of a three lane concrete road between Suffolk and Portsmouth, Virginia, a short distance east of Magnolia, in Nansemond county. The south traffic lane of the road was eleven feet wide and the others nine feet each. There were clear, usable dirt shoulders on either side of the concrete part of the road twelve to nineteen feet wide. It was on a straight stretch of a road without any grades. The night was clear and the roadway was dry. The road is one of the most traveled State highways, and subject to a dense and constant traffic.

Wiggins was the driver of a log truck consisting of a tractor and semi-trailer loaded with fifteen or sixteen gum

logs, freshly cut, weighing approximately 23,800 pounds. The ends of the logs extended about four feet beyond the rear of the trailer. Rose, the deceased, was the operator of a Ford convoy consisting of an unloaded tractor and semi-trailer for the conveyance of three automobiles, weighing approximately 15,000 pounds.

The defendant, Wiggins, was en route from Corapeake, North Carolina, to Portsmouth, Virginia, having left Corapeake at about 4:30 o'clock p. m. on that day. Between Corapeake and the place of the accident, he had stopped to eat his lunch, which delayed him fifteen or more minutes. After passing through Suffolk, Virginia, and while proceeding east on the three-lane concrete highway, he heard something fall on the road behind him. Still moving forward, he looked to the rear, saw a wheel coming off, and thinking that his axle was broken, he stopped immediately on the concrete, on that part of the highway used by eastern bound traffic. A short time after he made certain that the axle was broken, he stopped a passing motorist, and requested him to notify a State police officer, whom he had seen shortly before. In response to the summons, a State highway traffic officer came to the disabled truck, and Wiggins, upon inquiring of the officer what to do, was advised to go to Magnolia, and get a wrecking truck to come and move the log truck away as soon as he could. Magnolia was the nearest place in that vicinity where Wiggins could get to a telephone. After the officer left, Wiggins stopped another motorist, who picked him up and took him on by Magnolia into Suffolk, where he undertook negotiations with a motor company to send a wrecking crew to repair or remove the disabled truck. This occurred sometime between five and six o'clock p. m. The traffic officer did not see any lights on the truck, and it is admitted that no smudges were placed on the highway to warn the traffic, although it was rapidly becoming dark. The owner provided smudges, but Wiggins carried none with him on this trip. Witnesses who were traveling the highway observed the truck after six p. m. without any lights on it or any other warning devices.

One of these witnesses, driving a car with a man on the front seat, and with his wife and baby on the back seat, came upon it so suddenly that when he slammed on his brakes, it threw the baby and a flower pot off the back seat.

While Wiggins was gone from the truck, the Ford convoy operated by Rose, crashed into the rear of the parked and disabled log truck with such force that Rose was instantly killed.

Rose, after spending the night of February 11th, with his family, drove the Ford convoy on February 12th from Norfolk, Virginia, to Wilson, North Carolina. He was returning home by way of Suffolk and proceeding along the same highway towards Portsmouth, Virginia, an the right-hand side of the road at the time he met his death.

There were no eyewitnesses to the accident, although there was a witness, H. A. Miller, who was so close that he heard the noise of the crash. Miller, prior to the collision, had followed the Ford convoy a distance of about a quarter of a mile. Desiring to pass the Ford convoy, he increased his speed, pulled into the middle lane of the highway, passed Rose, and was in the act of getting to his proper place in front of the Ford convoy when suddenly he saw the log truck, and cut his wheels very sharply to miss it. Miller did not know his speed, but estimated that he was going between forty-five and fifty miles an hour when he passed Rose. He stated that he was just getting by the front of the parked log truck when he heard the noise of the crash. At the same time he was meeting another car coming from the opposite direction, which latter car was still followed by the fifth car near the scene. His impression is that the first of the oncoming cars passed the scene of the accident coming towards him at about the same time he passed the log truck. He stopped his car, went back to the log truck and found there were no lights on it, either on the front, or at the end of the trailer or load of logs. The trailer of the log truck was fourteen feet long, and allowing ten feet for the forward part of the truck, Miller was only

about twenty-four feet ahead of Rose when the collision occurred.

There were no material conflicts in the evidence except to the testimony of Wiggins that he left the lights burning on the log truck when he went to seek aid. Evidence that lights were not burning on the truck at the time of the collision is abundant and conclusive. Other evidence of the defendants with reference to the physical aspects of the situation, the effects of the force of the collision, the condition of the weather and the road, and other circumstances surrounding the collision were all submitted to the jury for its consideration.

The defendants contended that the evidence did not show any negligence on the part of Wiggins, and that even if Wiggins were negligent, the contributory negligence of Rose was disclosed as a matter of law.

The defendants moved to strike the plaintiff's evidence both at the conclusion of the testimony for the plaintiff and at the conclusion of all of the evidence in the case, which motions the court refused.

A verdict was rendered by the jury for the plaintiff in the sum of $8,000. The defendants then moved to set aside the verdict on the ground that it was contrary to the law and the evidence, and without evidence to support it, for misdirection of the jury, and because of the admission of improper evidence. The motion was denied and judgment was entered for the plaintiff.

We think that a mere statement of the evidence justifies a finding that the driver of the log truck was negligent. It was negligence to stop and leave parked on this densely traveled highway, after dark, the loaded log truck without lights or warning to the passing traffic, under the conditions herein stated. The exercise of the slightest amount of ordinary care and caution required that Wiggins should have seen that his lights were burning, or that warning signals were placed. Nor should he have abandoned his truck upon the road without anyone or anything to guard it, and gone on into Suffolk, when he might have tele-

phoned from Magnolia for assistance, or have had some pass-
ing motorist send assistance to him. Actionable negligence
of the defendants is amply and fully established.

The defendants say that if the truck of Rose had been
equipped with proper lights he should have seen the parked
log truck in time to have avoided it, if he had kept a proper
lookout; that the speed of Rose as shown by the physical
facts indicated he was driving at an unlawful rate; and that
with the wide side shoulders and triple lane of travel, he
should have turned to the right or left and avoided the log
truck.

 The answer to this contention is that Rose was
traveling in his proper traffic lane, and he had a right to
presume that no obstructions or unlighted objects would be
parked upon the highway in front of him. Immediately
before Rose reached the scene, the car of Miller coming
from his rear, passed him and began to make a turn to its
right in front of Rose, thereby diverting his attention to
a certain extent. That Miller and Rose were both close
to the parked log truck when Miller swerved sharply to
avoid it is shown by the fact that there was a distance of
only about twenty-four feet between them when the crash
occurred. In addition, the automobiles of Rose and Miller
were meeting an automobile and truck, whose lights were
shining in their direction, and so close to them that the
first of the oncoming automobiles passed the log truck just
as the collision occurred. It was more or less of a five-car
involvement, and unusual circumstances prevailed in the
swift moments that preceded the collision, a situation
precipitated and caused by the primary negligence of the
defendants. The speed of Rose's truck was necessarily less
than that of Miller's automobile, when the latter overtook
and passed him, and consequently could not have been in-
creased much in the short distance involved.

 The question of ordinary and reasonable care on
the part of Rose under the above circumstances was a ques-
tion for a jury. It was for them to determine whether other
reasonably prudent and careful persons would have done

likewise under like circumstances and conditions. Unless we are able to say that the evidence is such that all reasonable men can reach but one conclusion, the question does not become one of law. We cannot say, under the circumstances here, that all reasonable men could reach but one conclusion. Where the evidence and the direct inferences therefrom are such that reasonable and fair-minded men may differ in their conclusions, the question of negligence is a question of fact and is left to determination by the jury. *Harris* v. *Howerton,* 169 Va. 647, 194 S. E. 692.

In *Howe* v. *Jones,* 162 Va. 442, 174 S. E. 764, where the driver of a motor vehicle was blinded by the lights of an approaching automobile, the reasonableness of the conduct of the driver under the circumstances, was held a jury question.

In *Twyman* v. *Adkins,* 168 Va. 456, 191 S. E. 615, we held that the driver of an automobile need not constantly expect his path to be blocked by obstructions on the highway. While the circumstances in that case are not like those of the present case, they differ mostly in degree. There the parked automobile was gray in color similar to the atmosphere of an early morning; and there was only a small clearance for travel on either side of the car. Here there was a truck with a trailer loaded with logs recently cut and unpainted, hidden by a failing twilight, with the approaching automobile more or less pocketed by a passing car, by approaching cars and by the parked truck. If the deceased was driving at a rate of forty miles per hour, and at the moment of collision was only approximately twenty-four feet behind the car that had passed him, then only a fraction of a second had elapsed between the time that Miller halted his attempt to get into the right-hand line of traffic and turned to his left, and the time the latter took to reach the front of the log truck. In view of this circumstance and the other circumstances attracting and diverting the attention of the driver of the Ford truck, there was indeed small time, if any, for him to exercise any steps for his own safety. The amount of care required, the presence or absence of

care under the circumstances of the *Twyman Case, supra,* were left to the jury, as we believe should have been left to the jury in the instant case.

In *City of Radford* v. *Calhoun,* 165 Va. 24, 181 S. E. 345, 100 A. L. R. 1378, the plaintiff, proceeding along a city street and meeting another car near the center of the road with bright lights and a swaying motion, pulled his car to the side of the street and collided with some concrete slabs, which extended sixteen inches into the paved and used portion of the street. The city had not taken any precaution to light the obstruction, or to give any warning thereof to the traveling public. Under the circumstances, it was left to the jury to say what a reasonable and prudent man would have done under the circumstances. Textbook authorities and the courts of other States adhere to the same principle. *Sexton* v. *Styles,* 15 La. App. 148, 130 So. 821; Vartanian on "The Law of Automobiles," section 71.

It is not difficult to distinguish the instant case from that of *Kinsey* v. *Brugh,* 157 Va. 407, 161 S. E. 41, upon which the defendants rely. In that case, there was nothing on the highway to obstruct the defendant's vision, nor was he meeting another automobile and there was no other automobile passing him.

The defendants complain of the action of the trial court in granting the following instruction number 2, at the request of the plaintiff:

"The Court instructs the jury that no vehicle shall be left upon the highway in such manner as to impede, or interfere with, or render dangerous, the use of the highway by others; and if you believe from the evidence that the motor vehicle of the defendant was allowed to remain upon the highway in such unreasonable manner as to impede or interfere with, or render dangerous, the use of the highway by the plaintiff decedent, the defendant was guilty of negligence."

As originally offered by the plaintiff, this instruction was in the language of the statute, Virginia Code 1936, section 2154 (133), and used the word "stopped" instead of

the word "left." The court also added to the original instruction the word "unreasonable" before the word "manner."

The defendants contend that the amendment is not only a departure from the language of the statute, but is without evidence to warrant it. We are unable to follow their contention. If to stop a vehicle upon the highway in such a manner as to interfere with the use thereof by others is contrary to statute, certainly to stop and leave a truck upon the highway and to allow it to remain there in an unreasonable manner put the plaintiff to proof of a higher degree of negligence. While the statute may not have intended to penalize one who is stopped by accident, its language is sufficiently broad to include within its provisions one who, stopped by an accident, allows his vehicle to remain stopped in a manner unreasonably interfering with traffic and rendering dangerous the use of the highway. The amendment to the instruction was in accord with the evidence and more favorable than the original instruction to the defendants.

Any further objection to the granted instruction is removed by the giving of instruction L, in the following language, at the request of the defendants:

"If the jury believe that the defendant, Wiggins, did what a reasonably prudent man would have done to protect his truck and remove it from the highway, then he was not guilty of negligence."

It may be observed that instruction L is open to the objection that it made the reasonableness of Wiggins' conduct dependent upon his acts in protecting his truck and property instead of making the test apply with reference to his acts and conduct towards protecting the traveling public from the dangers involved in the situation.

The next assignment of error is to the granting of plaintiff's instruction number 6, which is in the following language:

"The Court instructs the jury that Shirley Rose, deceased, is presumed to have used reasonable care in the

management and operation of the truck driven by him, and unless disclosed by the plaintiff's evidence, the burden of proof is upon the defendants to show by a preponderance of the evidence that Shirley Rose was guilty of negligence in failing to use ordinary and reasonable care for his safety, and that his negligence, if any, contributed to his injury."

The defendants urged before the trial judge that this instruction should not be granted because the plaintiff's evidence disclosed facts and circumstances indicating that Rose did not use reasonable care in the management of his truck. They admit that the instruction is a correct statement of law, but claim here that it does not go far enough. In fact, the record does not show any exception to the instruction. The record only shows an objection to the language after the instruction was given. The objections raised to this instruction in the petition for the writ of error assert that it should have contained the language, "or may be fairly inferred from all of the facts and circumstances of the case," immediately after the word "evidence" first occurs therein.

There was not an eyewitness to the accident. Miller, the closest man to it, did not see it. Not a living soul could tell what happened from the time Miller passed, nor what Rose did or failed to do. The principle is so well established in Virginia, that negligence and contributory negligence are never presumed, but must always be proven, as to need no citation of authority. In the absence of any evidence to the contrary, it is presumed that Rose did his duty as he immediately approached the parked log truck; that he exercised ordinary care under the circumstances with which he was confronted, and did only what an ordinarily prudent man would have done under such circumstances. *Stratton* v. *Bergman,* 169 Va. 249, 192 S. E. 813; *Twyman* v. *Adkins, supra; Core* v. *Wilhelm,* 124 Va. 150, 98 S. E. 27; *Smith* v. *Hines,* 134 Va. 274, 115 S. E. 373.

Until the contrary is proven, there is a presumption that the deceased acted from the instinct of self-preservation and exercised due and proper care for the protection

of his person and the preservation of his life. This presumption prevails where the plaintiff is incapable of testifying, and there are no eyewitnesses. It is a presumption of law, and only obtains in the absence of evidence. When evidence comes in, the presumption goes out. The burden is upon the defendants to overcome the presumption by evidence.

Cases relied on by the defendants, to support their contention that the instruction was not complete, are cases in which juries were instructed that the burden was upon the defendant to prove that the plaintiff was guilty of contributory negligence, without anything more added to the instruction. Those instructions did not contain the words "unless disclosed from the plaintiff's testimony."

While it would have been preferable to have added to the instruction the words now suggested, if the trial court had been so requested, both the failure to state the grounds of the objection thereto and to make an exception at the proper time preclude consideration of such failure here. (Rule of Court 22.) However, there was nothing here to prevent the jury from considering inferences disclosed by the plaintiff's evidence, as well as facts so disclosed. It is apparent from the record that in the examination of the plaintiff's witnesses, every effort was directed to the disclosure of inferences against the plaintiff.

The defendants complain of the refusal of the court to grant instruction E, which reads as follows:

"The Court instructs the jury that if they believe from the evidence that the plaintiff's intestate was driving his car at an excessive rate of speed at the time of the accident then he is guilty of negligence, and if the jury believe that such negligence proximately caused or contributed to the accident, then he cannot recover and you must find for the defendants."

The objection was presented on the ground that there was sufficient evidence to show that Rose was driving at an excessive rate of speed.

██ The statute, Virginia Code, section 2154 (109), provides that it is *prima facie* negligence to drive at such speed as to endanger the life, limb, or property of any person, or travel at a speed in excess of forty-five miles an hour at the scene of the accident, or to travel at a speed faster than ordinary care would permit under similar circumstances and conditions. It does not use the words "an excessive rate of speed" standing alone. If the instruction had been qualified in the language of the statute, we cannot see that the reference to speed would have been improper. A failure to so qualify the word might very readily allow a jury in their individual minds to speculate and conjecture as to what is an "excessive rate of speed." In addition, the instruction failed to recite that the proof of an improper speed must be found to exist from a preponderance of the evidence. There was no evidence that Rose was traveling more than forty-five miles per hour. There was nothing in the physical facts surrounding the collision to fix the rate of speed.

There were seven or eight instructions given at the request of the defendants, which dealt with the theory of the defense with reference to specific acts of alleged negligence on the part of Rose. These instructions were very favorable, if not too favorable, to the defendants. The instructions as a whole fairly and favorably presented the theory of the defense, and the jury were specifically told that they might consider all of the surrounding facts and circumstances related in the evidence to determine whether under the circumstances, Rose was guilty of such negligence as precluded a recovery.

The final assignment of error relates to the question of insurance being brought into the case. During the latter part of the examination of the defendant, Armstrong, by his counsel, he was asked the following question:

"Q. About what time in the afternoon did you get there?"

"A. One of our other drivers came along from Norfolk and stopped there and the patrolman told him to come on and telephone, call me and tell me what had happened, and

he came up to the nearest phone and called me and told me what had happened, and I came right on to Suffolk and came and got my insurance carrier, Mr. Jones, and we went down to the accident."

After this reply, the examination was continued, and the witness was subjected to a cross-examination until its completion. The jury was then excused for lunch.

After the jury had retired, counsel for the defendants made a motion to declare a mistrial on the ground that the answer of the witness, Armstrong, with reference to his insurance carrier, was not responsive to the question, and was unexpected. The motion was overruled, and counsel excepted without assigning grounds.

It is here contended that the statement was prejudicial not only to the defendant, Armstrong, but to the defendant, Wiggins, and that it probably affected the result of the trial. Counsel for the defendants did not object to the testimony at the time the statement was made by the witness, but continued their examination, and permitted the cross-examination to be completed. They asked for no instruction from the court in reference to the testimony, nor did they then allege that the statement was prejudicial to the rights of either defendant.

The statement did not necessarily mean that the defendant had public liability insurance or insurance on the particular truck involved, although there might have been some speculation to that effect by the jury. The defendants did not object until after the cross examination. They did not take the precaution of requesting the judge to instruct the jury as to the effect of the statement, and did not with reasonable certainty set out their objections. Without taking the above precaution, they took their chances with the jury, doubtless hoping for a favorable verdict.

We cannot see that the trial court abused the exercise of a sound discretion in refusing the motion under the circumstances outlined. *Kiser* v. *Suthard*, 162 Va. 456, 174 S. E. 682.

██ The issues were fairly submitted to the jury. Their verdict has been approved by the trial judge, who saw and heard the witnesses testify. We cannot say that the judgment is plainly wrong. We cannot do otherwise than affirm it. Virginia Code, section 6363.

*Affirmed.*

HUDGINS, J., dissenting.