# Richmond

RICHARD H. MARTIN, JR. v. JEWEL CARRINGTON, COMMITTEE OF ALEXANDER OWEN.

April 21, 1952.

Record No. 3917.

Present, All the Justices.

The opinion states the case.

*Robert G. Butcher, Richard L. Williams* and *Charles R. Warren, Jr.*, for the plaintiff in error.

*Easley, Edmunds & Vaughan,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Alexander Owen, while standing on the northern side of the paved portion of Highway No. 58 near its junction with Highway No. 501, in Halifax county, was struck by an automobile driven by Richard H. Martin, Jr., and proceeding westwardly along Highway No. 58. As the result of the collision Owen sustained severe injuries, including a fracture of the skull and permanent damage to his brain which have rendered him mentally incompetent. Jewel Carrington, the committee of Owen, recovered in the lower court a verdict and judgment of $5,000 for damages for Owen's injuries and the matter is before us on a writ of error awarded the defendant, Martin. The only question we need consider is whether the evidence is sufficient to sustain the verdict and judgment below.

There is little or no conflict in the evidence which may be summarized thus: On July 23, 1950, at about 10:15 p. m., the defendant, Martin, a student doing graduate work at the Virginia Polytechnic Institute, accompanied by his wife, Annie Oakes Martin, was driving his 1948 model Ford coupe westwardly along Highway No. 58, about one mile east of Riverdale near South Boston. The night was dark, the weather clear, and the highway dry. At the point of the collision the highway is straight in both directions for approximately half a mile. The paved portion of the highway is approximately twenty-five feet in width and flanked on either side by dirt shoulders from eight to ten feet wide. At the time of the accident the shoulders were in ''pretty good shape'' and free of mud and debris. The paved portion of the highway and the adjoining shoulders proceed along a fill about ten feet above the level of the adjacent terrain.

The only eyewitnesses to the accident were the defendant, his wife, and Owen. Since Owen, because of his injuries, was unable to attend the trial and incompetent to testify, we must look to the testimony of the defendant, Martin, and that of his wife for the details of the accident.

Martin testified that as he approached the place of the collision he was proceeding at a speed of about fifty miles an hour. His car was in good condition and the headlights were burning. Because he was partly blinded by the headlights of several cars coming from the opposite direction he reduced his speed to within approximately forty to fifty miles an hour. Just as the last passing car was ''alongside'' the Martin car the latter struck Owen a glancing blow with the right front fender and headlight.

Although Martin says that he was looking ahead, he did not see Owen before the impact. He attributed his failure to see the pedestrian to the fact that he was "partially blinded" by the headlights of the oncoming cars.

Mrs. Martin, who was riding in the right-hand seat and nearest the pedestrian, testified that she saw him "about the time he was struck," that he was "facing me" and "appeared to be standing still," "maybe two or three feet" "on the hard surface." She corroborated her husband's statement that "we were passing a car at the same instant we struck the man."

The car was shortly brought to a stop, turned around, and the occupants returned to the place where the collision had occurred. Owen was lying on the northern shoulder four or five feet from the edge of the hard surface.

A State trooper reached the scene within fifteen minutes, but in the meanwhile Owen had been removed to a hospital. A pool of blood showed where the injured man had lain on the shoulder. One of Owen's shoes was picked up sixty-two steps west of the place where his body had been lying.

An examination showed that the automobile had been damaged on its right side. The right front headlight was broken and the right front fender "bent back."

The trooper found no skid marks on the pavement and no tire marks which indicated that the car had run off the pavement onto the shoulder.

The statements made to the officer by the defendant and his wife at the scene were substantially in accord with their testimony at the trial. From these statements and the physical surroundings the officer said that he found nothing to indicate that at the time of the accident the defendant was "traveling at an excessive rate of speed."

The evidence is that Owen, a "dark-skinned" Negro, was wearing "a dirty blue or gray shirt and brown pants."

We need not stop to inquire whether the evidence warrants a finding that the defendant, Martin, was guilty of negligence which proximately caused the collision. Assuming that he was, we think it is clear that Owen was guilty of contributory negligence which bars a recovery in his behalf.

It is true, as is argued on behalf of the plaintiff, that contributory negligence is not presumed but must be proven, and that there is a like presumption that the plaintiff exercised or-

dinary care for his own safety and did only what an ordinarily prudent man would have done under the circumstances. From this premise it is argued that there is a presumption that Owen was walking or standing in a proper place on the highway or even on the shoulder at the time he was struck.

The trouble with this argument is that it ignores the principle that the presumption relied on prevails only in the absence of evidence. It may be overcome by affirmative evidence that the pedestrian failed to exercise ordinary care for his safety. *Armstrong* v. *Rose,* 170 Va. 190, 203, 196 S. E. 613, 618.

In the case before us the undisputed evidence is that at the time Owen was struck he was standing on the paved portion of the highway in the path of the oncoming automobile. There is no evidence that the car left the pavement and ran onto the shoulder. How long he had been standing there we do not know, but the headlights of the car which were shown to be in good condition were plainly visible to him for half a mile. Either he failed to see the lights or failed to heed their approach.

Assuming, but not deciding, that Owen had the statutory right to walk on the pavement (Code, § 46-247, as amended by Acts 1950, ch. 433, p. 850), this did not relieve him of the duty of removing himself from a position of obvious peril which he could easily have done. *Fein* v. *Wade,* 191 Va. 203, 209, 61 S. E. (2d) 29, 32. The undisputed evidence is that the shoulder was free of mud or debris and afforded him ample space and opportunity for removing himself from the path of the car. A single step from the pavement onto the shoulder would have averted the collision.

What we said of a similar situation in *Lambert* v. *Allen,* 190 Va. 317, 320, 57 S. E. (2d) 39, 41, is applicable here: "Clearly, his chance or opportunity to avoid the collision was, to say the least, equal to that of the driver of the car. Or, to put the matter another way, even if the driver be guilty of negligence this did not relieve the plaintiff of the duty of avoiding the collision if he had the opportunity of doing so up to the moment of the collision. The controlling principles are well fixed and are stated in *South Hill Motor Co.* v. *Gordon,* 172 Va. 193, 200 S. E. 637, and *Anderson* v. *Payne,* 189 Va. 712, 54 S. E. (2d) 82."

For these reasons the verdict is set aside, the judgment reversed, and a final judgment will be here entered for the defendant.

*Reversed and final judgment.*