Present:  All the Justices

HOT SHOT EXPRESS, INC., ET AL.
                                      OPINION BY
v.  Record No. 011952      JUSTICE LAWRENCE L. KOONTZ, JR.
                                      June 7, 2002
HATTIE E. BROOKS

           FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
             Charles H. Smith, Jr., Judge Designate


     In this appeal, we consider various issues arising out of a

judgment in favor of the plaintiff in a personal injury action.

                           BACKGROUND

     On September 22, 1998, Thomas A. Bell was driving a

tractor-trailer for Hot Shot Express, Inc. from Pennsylvania to

Stuarts Draft, Virginia.  Bell arrived in Stuarts Draft at

approximately 9:00 p.m.  Bell planned to drop the trailer at the

intended delivery site on highway U.S. 340 and to return the

next morning to complete the delivery.  Bell was unfamiliar with

Stuarts Draft and did not know the precise location of the

delivery site.

     As Bell turned the tractor-trailer onto U.S. 340 in Stuarts

Draft, he drove to the right northbound travel lane and slowed

his vehicle to between 15 to 20 miles per hour.  Bell

subsequently maintained that he had activated the tractor-

trailer's four-way hazard lights at that time.  After traveling

approximately one-half mile, Bell realized that he had gone past

the delivery site and stopped the tractor-trailer.  At the point

where Bell stopped his vehicle, U.S. 340, which runs north and south, has two travel lanes in each direction and a center turn lane, but no shoulders. Thus, when Bell stopped his vehicle, it completely blocked the right northbound travel lane. The speed limit on this portion of the highway is 45 miles per hour.

Bell determined that he could not back his vehicle to the delivery site and decided to proceed down U.S. 340 to find a place to turn around. Before driving forward, Bell observed from his rearview mirror two vehicles traveling in the right northbound lane. Bell observed one of the vehicles move to the left northbound lane. Bell was "not positive" which vehicle moved to the left lane, but "believe[d] it was the vehicle in front." Bell then turned his attention ahead and began to drive the tractor-trailer forward at a speed of approximately five miles per hour. After proceeding fifteen to twenty-five feet, Bell felt the impact of a collision at the rear of his vehicle. Bell did not see the collision from his rearview mirror and did not know whether his vehicle had been struck by one of the vehicles that he had observed earlier or by some other vehicle.

Bell's tractor-trailer had been struck by a compact sedan driven by Hattie E. Brooks. Brooks' vehicle was wedged under the rear of the tractor-trailer. The roof of her vehicle had to be removed by rescue workers in order to remove Brooks from the vehicle's interior. Brooks was severely injured as a result of

the collision, including injuries to her neck, back, and both wrists.

On February 2, 1999, Brooks filed a motion for judgment against Hot Shot Express and Bell (hereinafter collectively "Hot Shot Express") seeking $3,000,000 in damages for injuries she sustained in the September 22, 1998 collision.[1]  Thereafter, Hot Shot Express filed grounds of defense denying negligence and asserting that Brooks' own negligence was the cause of the collision.  Prior to trial, Brooks stipulated that she had no memory of the events that led to the collision, but further stipulated that she would not assert her memory loss as an element of her damages resulting from the injuries she sustained in the collision.

Beginning on May 10, 2001, a two-day jury trial was held in the Circuit Court of Augusta County.  In addition to the facts recounted above, the trial court received evidence from Brooks, who was 78 years of age at that time.  She testified that on the night of the accident she had driven her car along U.S. 340 from her place of employment and that her car was in good condition prior to the accident.  However, she testified that she had no recollection of how the accident occurred and very little

_____

[1] Brooks' suit also named an additional party defendant. That party was subsequently dismissed from the suit with prejudice.

3

recollection of her subsequent treatment in the hospital for several weeks.

Also, Pamela J. Coffman testified that she had driven by the accident scene in her vehicle immediately after the accident occurred. Coffman described the road conditions as "very dark" and testified that she could not see lights illuminated on either the tractor-trailer or Brooks' vehicle as she approached the accident scene in the right northbound lane of U.S. 340. Coffman further testified that she had avoided striking Brooks' vehicle only by braking suddenly and moving sharply into the left northbound lane. One of the police officers responding to the accident testified that he observed the four-way hazard lights on Bell's vehicle activated at some point, but that he did not recall whether those hazard lights were burning when he first arrived at the scene.

At the conclusion of Brooks' case-in-chief, Hot Shot Express moved to strike her evidence on the grounds that it failed to show that Bell was negligent or that his negligence was a proximate cause of the collision. Hot Shot Express contended that the evidence showed that Bell's actions had comported with Code § 46.2-1040, requiring drivers to activate all four turn signals simultaneously when stopped on a highway and, thus, that he was not negligent as a matter of law. Brooks responded that Bell's actions were in violation of Code § 46.2-

4

888, requiring drivers not to stop on a highway so as to impede traffic except in the case of an emergency. The trial court denied the motion to strike.

Hot Shot Express then moved to strike the evidence on the ground that Brooks was contributorially negligent as a matter of law. Hot Shot Express contended that Brooks' evidence plainly showed that she failed to maintain a proper lookout. Brooks responded that she was entitled to a presumption of using ordinary care and that Coffman's testimony established that the tractor-trailer was difficult to see. The trial court denied the motion to strike, stating that contributory negligence was an issue for the jury to determine on the evidence so far adduced.

At the conclusion of all the evidence, Hot Shot Express renewed its motions to strike Brooks' evidence on the same grounds that it had previously asserted. The trial court again denied these motions. Brooks then moved to strike Hot Shot Express' evidence regarding the issue of primary negligence. The trial court, over Hot Shot Express' objection, ruled that Bell had violated Code § 46.2-888 by stopping his vehicle on the highway under the existing circumstances and, therefore, was negligent as a matter of law. The trial court further ruled that the questions whether Bell's negligence was a proximate

5

cause of the collision and whether Brooks was contributorially negligent would be submitted to the jury.

Thereafter, the trial court, over Hot Shot Express' objection, refused its proffered instruction A concerning the duty of a driver of a vehicle not to "follow another vehicle more closely than is reasonable and prudent." Hot Shot Express contended that Brooks' theory of the case required the jury to accept that she was the driver of the second vehicle observed by Bell from his rearview mirror and that the jury could find that she had been following the first vehicle too closely. Brooks responded that her theory was only that the first vehicle may have obscured her view of the tractor-trailer.

Hot Shot Express also objected to the trial court's granting of Brooks' instruction P, which provided:

> In the absence of evidence to the contrary, it must be presumed that [Brooks] exercised ordinary care for her own safety and did only what an ordinarily prudent person would have done under the circumstances of this case.

Hot Shot Express contended that because Brooks' memory loss prevented her from presenting evidence regarding her actions prior to the collision, she should not be entitled to a presumption that those actions were proper. Brooks asserted that the instruction was a proper statement of the law. Brooks further asserted that her stipulation regarding her memory loss was only that her memory loss was not an element of her damages,

and not that it was unrelated to the accident.  Hot Shot Express contended that the stipulation contained no such limitation.

The trial court stated that it was "concerned about giving . . . instruction [P]," because the court had already resolved to instruct the jury on contributory negligence.  However, relying on Petress v. Seay, 219 Va. 1053, 1059-60, 254 S.E.2d 91, 95 (1979), the trial court determined that the presumption of ordinary care instruction was not conclusive and could be given along with instructions on contributory negligence.

The jury returned its verdict for Brooks, awarding her damages in the amount of $340,000.  Hot Shot Express moved to set aside the jury's verdict on the ground that it was contrary to the evidence and the law.  The trial court denied this motion and entered judgment on the jury's verdict in a final order dated May 30, 2001.  We awarded Hot Shot Express this appeal.

DISCUSSION

Primary Negligence

Hot Shot Express first contends that the trial court erred in failing to strike Brooks' evidence on the ground that it failed to establish that Bell's actions were negligent or a proximate cause of the collision.  As it did in the trial court, Hot Shot Express relies upon Code § 46.2-1040, contending that Bell's actions comported with the requirements of that statute and that no other evidence would permit the jury to determine

7

that he was otherwise negligent.  Brooks, also adopting her argument from the trial court, contends that Bell's actions were clearly in violation of Code § 46.2-888 and, thus, the trial court correctly ruled that Bell was negligent as a matter of law.  We agree with Brooks.

In relevant part, Code § 46.2-888, which permits certain emergency stopping of vehicles on highways, provides that:

> No person shall stop a vehicle in such manner as to impede or render dangerous the use of the highway by others, except in the case of an emergency, an accident, or a mechanical breakdown.  In the event of such an emergency, accident, or breakdown, the emergency flashing lights of such vehicle shall be turned on if the vehicle is equipped with such lights and such lights are in working order.

Similarly, Code § 46.2-1040, which provides for the appropriate use of hazard lights, states in relevant part that:

> Motor vehicles, trailers, and semitrailers, when temporarily stopped on the traveled or paved portion of the highway so as to create a traffic hazard, shall flash all four turn signals simultaneously to signal approaching motorists of the existing hazard whenever such vehicle is equipped with a device which will cause the four turn signals to flash simultaneously.

Contrary to Hot Shot Express' contention, made during oral argument of this appeal, there is nothing inherently contradictory in these two statutes.  Indeed, they are wholly consistent in the factual context of this case.  Code § 46.2-1040 specifies the circumstances in which a stopped vehicle's four-way hazard lights are to be activated.  Code § 46.2-888

8

specifies the circumstances under which a driver may lawfully stop his vehicle on the highway and then is required to activate the four-way hazard lights on his vehicle.

For this part of our analysis only, we will assume that the evidence supports Hot Shot Express' contention that Bell had activated the tractor-trailer's four-way hazard lights prior to the collision. The fact that this action was in compliance with Code § 46.2-1040 does not preclude, however, a conclusion that Bell nonetheless acted in violation of Code § 46.2-888.

Bell testified that he stopped his tractor-trailer in a travel lane of U.S. 340, a heavily traveled main road with no shoulder, because he was unfamiliar with the area and had driven beyond the site where he had intended to turn off the highway. Clearly, Bell's reason for stopping his vehicle did not involve "an emergency, an accident, or a mechanical breakdown." Accordingly, even if Bell complied with the requirements of Code §§ 46.2-888 and 46.2-1040 in activating the four-way hazard lights on his vehicle, he was nonetheless in violation of the former statute because he had no lawful reason to stop on the highway and "impede or render dangerous the use of the highway by others."

It is negligence per se to violate a statute prohibiting the stopping of a motor vehicle in such manner as to impede or render dangerous the use of the highway by others, except in the

9

case of an emergency, as the result of accident, or because of a mechanical breakdown. Baxley v. Fischer, 204 Va. 792, 798, 134 S.E.2d 291, 295 (1964). As the trial court here recognized, however, in such circumstances the "[p]roximate cause or causal connection between negligence and the accident is usually a question of fact for the jury to decide." Id. Accordingly, we hold that the trial court did not err in failing to strike Brooks' evidence and in ruling that Bell was negligent as a matter of law, leaving to the jury the question whether that negligence was a proximate cause of the collision.

## Contributory Negligence

Hot Shot Express next contends that the trial court erred in failing to strike Brooks' evidence and to rule that she was contributorially negligent as a matter of law. Hot Shot Express relies upon Perdue v. Patrick, 182 Va. 398, 407-08, 29 S.E.2d 371, 374-75 (1944), for the proposition that a driver who collides with the rear section of a stalled vehicle when traveling at a speed sufficient to demolish his vehicle is contributorially negligent as a matter of law. Brooks contends that Perdue is inapplicable to the facts of this case. She contends that in Perdue there was no question that the stopped vehicle was clearly illuminated by lights and a flare, whereas here the evidence regarding whether the four-way hazard lights

10

on Bell's tractor-trailer were activated and visible was in conflict. Again, we agree with Brooks.

Ordinarily, whether a plaintiff is guilty of contributory negligence is a jury issue. The issue becomes one of law for resolution by the trial court only when reasonable minds could not differ about the conclusion from the evidence. Love v. Schmidt, 239 Va. 357, 360, 389 S.E.2d 707, 709 (1990). Unlike the question of Bell's negligence in this case, in considering the question of Brooks' contributory negligence, we may not assume that the evidence conclusively supports Hot Shot Express' contention that Bell activated the tractor-trailer's four-way hazard lights prior to the collision. Although Bell testified he had done so, Coffman testified that when passing the accident scene immediately after the accident she saw no lights burning on the tractor-trailer. Based upon this conflict in the evidence, we cannot say the trial court erred in submitting the issue whether Brooks was contributorially negligent to the jury. See Godwin v. Camp Manufacturing Co., 183 Va. 528, 534, 32 S.E.2d 674, 677 (1945). Accordingly, we hold that the trial court did not err in denying Hot Shot Express' motion to strike on the ground that Brooks was contributorially negligent as a matter of law.

Hot Shot Express asserts that the trial court erred in giving Brooks' instruction P. Hot Shot Express contends that an instruction that a plaintiff is presumed to have acted with ordinary care is proper principally in wrongful death cases, and then only when no evidence rebuts the presumption. In this instance, Hot Shot Express contends that, if the presumption would otherwise apply, there was evidence of Brooks' negligence that would rebut the presumption. Brooks responds that the instruction is appropriate in any case where the plaintiff is alleged to be contributorially negligent, the plaintiff is incapable of testifying regarding the cause of the accident, and there is no evidence to rebut the presumption.

Unquestionably, it has long been the rule that when contributory negligence is asserted as a defense in a personal injury action, negligence on the part of the plaintiff is not presumed, and a defendant who relies on contributory negligence as a defense has the burden of proving that it existed and that it was a proximate cause of the accident. Elliott v. Lewis, 207 Va. 361, 365, 150 S.E.2d 129, 131 (1966). As a corollary to this rule, it has also long been accepted universally that in a wrongful death action, in the absence of eyewitness testimony or other evidence to the contrary, it will be presumed that the deceased acted with ordinary care. Charlottesville Music Cen.

12

v. McCray, 215 Va. 31, 37, 205 S.E.2d 674, 679 (1974); Hagan v. Hicks, 209 Va. 499, 505, 165 S.E.2d 421, 426 (1969); see also Looney v. Metropolitan Railroad Co., 200 U.S. 480, 488 (1906) ("if there is no evidence which speaks one way or the other with reference to contributory negligence of the person killed, then it is presumed that there was no such negligence"). This well settled principle derives from the recognition that, death having silenced the decedent from testifying in his own behalf, the defendant should not benefit from being able to assert that the decedent was negligent in the absence of other evidence to support that assertion. See, e.g., Richards v. Southern Pacific Transp., 666 F.2d 99, 109 (5th Cir. 1982) (Tate, J., dissenting.) Of course, when there is clear evidence that the decedent failed to act with ordinary care, the presumption does not apply. See Powell v. Nichols, 209 Va. 654, 659, 166 S.E.2d 243, 246 (1969).

We have extended the presumption of ordinary care to include not only those instances in which the plaintiff was killed as a result of the accident, but also to those in which the plaintiff's injuries rendered him incapable of testifying on his own behalf. See, e.g., Martin v. Carrington, 193 Va. 627,

629-30, 70 S.E.2d 313, 315 (1952).[2]  However, we have not previously applied the presumption to the circumstance where the plaintiff is capable of testifying, but asserts a lack of memory as to how the accident occurred.

In those jurisdictions which have addressed this issue, it is generally, though not universally, accepted that if the injuries sustained in the accident cause retrograde amnesia,[3] the presumption will apply in the absence of independent evidence of the plaintiff's negligence.  See, e.g., Schultz & Lindsey Construction Co. v. Erickson, 352 F.2d 425, 434 (8th Cir. 1965); Sherry v. Asing, 531 P.2d 648, 660 (Haw. 1975); Shaw v. Bashore,

---

[2] In VEPCO v. Mabin, 203 Va. 490, 492, 125 S.E.2d 145, 147 (1962), we stated that "[a] plaintiff in a personal injury case is entitled to the legal presumption that he was free of negligence, and this presumption will prevail in his favor unless his negligence appears from his own evidence or from that produced by the defendant."  That case was not a wrongful death action and the plaintiff testified at trial.  The plaintiff, a part-time roofer, was injured on a roof of a dwelling over which VEPCO had installed an electrical wire.  The sole issue was whether the evidence established that the plaintiff was guilty of contributory negligence as a matter of law.

The authorities cited for the quoted proposition all involve wrongful death actions.  Taken in proper context, we were addressing our review of a successful plaintiff's case on appeal by the defendant.  We did not mean to suggest, however, that the presumption of care extends to any plaintiff when there is no evidence that rebuts that presumption regardless of a particular case.  Brooks' suggestion to the contrary is rejected.

90 N.W.2d 688, 691 (Mich. 1958); Haider v. Finken, 239 N.W.2d 508, 521 (N.D. 1976); Anderson v. Schulz, 527 P.2d 151, 152 (Wyo. 1974). But cf. Dickson v. Bober, 130 N.W.2d 526, 532 (Minn. 1964) (presumption of ordinary care applied only to death case by statute and would not be extended to memory loss case).

The majority view of other jurisdictions that a plaintiff suffering retrograde amnesia as a result of injuries sustained in an accident is entitled to a presumption of ordinary care in the absence of evidence to the contrary supports a logical extension of our prior application of the presumption of ordinary care in Virginia. We perceive no significant distinction between the rationale underlying this presumption in wrongful death cases or those where the plaintiff's injuries render him incapable of testifying on his own behalf and the rationale which supports this presumption in a case of traumatic retrograde amnesia. So long as the plaintiff's inability to testify fully in his own behalf was caused by injuries suffered in the accident with the defendant, then such a surviving plaintiff and a deceased plaintiff differ logically only in the degree of their injuries rather than their entitlement to the presumption of ordinary care. Accordingly, we hold that the

---

[3] The term retrograde amnesia is used here generally to mean the failure to recall prior experiences as opposed to senility or some other form of memory loss.

presumption of ordinary care is applicable to a plaintiff who establishes that his or her retrograde amnesia was caused by injuries suffered in an accident in the absence of proof, either from an eyewitness or other evidence, to the contrary.

Applying this principle in the present case, we are unable to find, nor have we been directed to find, any evidence in the record that establishes that Brooks' loss of memory was caused by the injuries she suffered in the accident, and we are not willing to extend the presumption of ordinary care to cases of memory loss unrelated to or not caused by the injuries suffered by a plaintiff. Brooks was not incompetent to testify and, in fact, as we have noted, did testify at trial. She was able to recall and relate some matters, but she maintained that she had no memory of the critical events that led up to the collision of her vehicle with Bell's vehicle. There is no suggestion that Brooks was feigning her loss of memory and the parties seem to agree that it was genuine.

However, Brooks did not attempt to identify the cause of her loss of memory. Moreover, the three doctors who testified by deposition at trial regarding Brooks' injuries and their treatment of Brooks for those injuries did not opine that Brooks' loss of memory was caused by those injuries. We also observe that although the apparent force of the impact of the collision between the parties' vehicles suggests that Brooks

16

probably suffered retrograde amnesia as a result, such a conclusion would not be based upon fact but, rather, pure speculation.

Additionally, Brooks' stipulation that she was not claiming damages for her loss of memory does not establish that her loss of memory was caused by the injuries she suffered in the accident. Rather, Brooks' counsel sought to avoid introduction of evidence that Brooks had suffered episodes of memory loss, and other medical problems, prior to the date of the accident. Brooks' counsel obviously was not in a position to stipulate that Brooks' memory loss was caused by her injuries and counsel for Hot Shot Express did not agree to so stipulate.

We hold that Brooks was not entitled to receive the benefit of the presumption of ordinary care because she failed to establish that her retrograde amnesia was caused by the injuries she suffered in the accident. Therefore, we further hold that the trial court erred in granting Brooks' instruction P. "If an issue is erroneously submitted to a jury, we presume that the jury decided the case upon that issue." Clohessy v. Weiler, 250 Va. 249, 254, 462 S.E.2d 94, 97 (1995). Accordingly, we cannot say that the trial court's error in instructing the jury on the presumption of ordinary care was harmless, and we must reverse the judgment in favor of Brooks.

17

Hot Shot Express also assigns error to the trial court's refusal to give its instruction A on following too closely. Because the issue will undoubtedly arise in any trial on remand, we will address this issue as well.

Bell testified only that he saw two vehicles from his rearview mirror. He did not testify with regard to the distance between the two vehicles or that Brooks was driving the second vehicle. Even assuming that Brooks was the driver of the second vehicle, evidence that a plaintiff was following a car driven by an unknown person prior to a collision with another vehicle, without more, does not warrant the giving of a "following too closely" instruction. Nicholoau v. Harrington, 217 Va. 618, 624-25, 231 S.E.2d 318, 323 (1977). Accordingly, the trial court did not err in refusing Hot Shot Express' instruction A.

### CONCLUSION

For these reasons, the judgment of the trial court will be affirmed in part, reversed in part, and the case will be remanded for a new trial consistent with the views expressed in this opinion.

Affirmed in part,
reversed in part,
and remanded.

18