COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Clements and Kelsey
Argued at Salem, Virginia


RANDALL LEE PATTERSON

MEMORANDUM OPINION[*] BY
v.        Record No. 1707-05-3          JUDGE JAMES W. BENTON, JR.
                                        FEBRUARY 21, 2006

VALLEY PROTEINS, INC. AND
 ROYAL INDEMNITY COMPANY


                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Timothy E. Kirtner (Gilmer, Sadler, Ingram, Sutherland & Hutton,
            on brief), for appellant.

            Robert M. Himmel (Frith Anderson & Peake, PC, on brief), for
            appellees.


        The Workers' Compensation Commission ruled that Randall Lee Patterson's claim for

workers' compensation benefits was barred by his "willful misconduct." See Code § 65.2-306.

Patterson contends the evidence was insufficient to support the commission's decision. For the

reasons that follow, we affirm the commission's denial of benefits.

                                        I.

        Randall Lee Patterson filed a claim for compensation benefits and medical costs for

injuries he suffered while driving a tractor-trailer in the employ of Valley Proteins, Inc. Shortly

before the accident, Patterson stopped on the right shoulder of the highway, exited his vehicle,

and urinated. When Patterson drove the tractor-trailer back onto the highway, another

tractor-trailer hit him from behind. Valley Proteins filed a notice of intent to rely upon a defense

under Code § 65.2-306, which provides, in pertinent part, as follows:

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

A.  No compensation shall be awarded to the employee or his dependents for an injury or death caused by:

1.  The employee's willful misconduct or intentional self-inflicted injury;

2.  The employee's attempt to injure another;

3.  The employee's intoxication;

4.  The employee's willful failure or refusal to use a safety appliance or perform a duty required by statute;

5.  The employee's willful breach of any reasonable rule or regulation adopted by the employer and brought, prior to the accident, to the knowledge of the employee; or

6.  The employee's use of a nonprescribed controlled substance . . . .

In its notice of defense, Valley Proteins specifically alleged that Patterson "willfully failed and/or refused to perform a duty required by statute" when he "illegally stopped his vehicle on the side of the road . . . and re-entered the roadway . . . without his lights being on." Later, at the evidentiary hearing, Valley Proteins asserted that Patterson's claim was barred by "willful misconduct under [Code § 65.2-]306" but specifically alleged that Patterson acted in violation of both a state statute and the employer's safety rules.

The circumstances surrounding the accident were in dispute at the hearing. Patterson's testimony at the hearing and on deposition was that he stopped his tractor-trailer on the shoulder of an interstate highway at the top of a hill about 10:00 p.m. in February 2003. He said he activated the emergency flasher lights on the vehicle, exited the vehicle, and urinated. Before re-entering the vehicle, he checked the lights and tires. He said everything was working at that time except for one light, which he had earlier reported to his supervisor.

According to Patterson, he activated his signal light when he re-entered his vehicle, looked into his mirrors, and drove onto the highway. He descended the hill and had ascended three-quarters of the next hill, about a mile from where he entered the highway, when he felt an

impact. Patterson said the impact to the truck rendered him unconscious. When he regained consciousness, he set up emergency markers and called his company to inform them of the accident. Patterson testified he did not speak with anyone before medical assistance personnel arrived. Patterson also testified that the investigating police officer gave him a summons for reckless driving and that a judge later convicted him of improper driving.

Other evidence before the deputy commissioner materially contradicted Patterson's testimony. When Trooper Joe Crowder arrived at the site of the accident, he found Patterson in the back of an ambulance and somewhat disoriented. Trooper Crowder interviewed Roy Poe, the driver of the other tractor-trailer involved in the accident. Poe said he was traveling 60 to 65 miles per hour when Patterson drove his vehicle onto the highway. He applied his brakes and hit the rear of Patterson's vehicle. Trooper Crowder said Poe later testified in court that Patterson's vehicle's lights were not illuminated.

Trooper Crowder interviewed another truck driver, Thorston Bendzka, who was traveling northbound behind Poe's vehicle. Bendzka "saw [Patterson's] tractor come off the shoulder, pull off into the highway and noticed that it didn't have any hazards or any lights on at the time." Bendzka said Patterson "turned his lights on" after Poe's vehicle hit Patterson's vehicle. Bendzka also told Trooper Crowder that, shortly after the collision, Patterson asked Bendzka "to tell the trooper this is what happened."

Trooper Crowder talked to Patterson later that night at the hospital. Patterson said he had stopped to urinate on the shoulder of the highway, returned to the highway, and was driving up the hill when another tractor-trailer hit the rear of his vehicle. Trooper Officer Crowder told Patterson that witnesses said the lights on his truck were not illuminated, Patterson said the lights were illuminated. Trooper Crowder issued a citation to Patterson for reckless driving "based on his movements into the highway and the traffic conditions."

Trooper Crowder testified that "signs on the interstate indicate . . . emergency stopping only." He also testified that stopping on the shoulder of the highway to urinate is a violation of Code § 46.2-830, which provides that "[a]ll drivers of vehicles shall obey lawfully erected signs." He said "the statute allows you to stop for . . . an emergency, a medical condition of some sort . . . or . . . a mechanical breakdown." Trooper Crowder testified that he decided not to give Patterson a summons for violating Code § 46.2-830 but, instead, elected to charge reckless driving based upon Bendzka's observations of Patterson's driving.

Hobie Halterman, general manager of a Valley Proteins facility, testified that the employer considered Patterson's act of stopping his vehicle on the shoulder of the highway to urinate to be a non-emergency stopping. He cited company guidelines that prohibit "[c]areless or willful acts by an employee which endanger or cause injury to another person or employee" and require "vehicles [to] be operated in a careful, safe manner at all times according to all federal, state and local laws and prevailing road conditions." In addition, he testified that Valley Proteins's rules mandate compliance with federal and state traffic laws and that Patterson's act of stopping to urinate on the shoulder of the highway violated state statute.

Thomas Harris, Patterson's supervisor, echoed Halterman's testimony that Patterson's stop was a violation of Valley Proteins's rules. Harris explained that "you only use the emergency shoulders for emergencies," but he also testified that "[i]f you want to you go up to off ramps and you can pull over there where the space is bigger and stuff."

Halterman and Harris also testified that Valley Proteins has a computerized logging system in its trucks, and they identified the printed report of the data that tracked the activity of Patterson's truck. Harris explained that the computer tracking system indicates intervals when the vehicle is moving or stopped and that, once a truck stops, the system will not register an end to the stop until the truck has travelled at least two-tenths of a mile. Reviewing the data, Harris

testified Patterson stopped for seventeen minutes and then drove back onto the highway, but the data also indicated the vehicle stopped again due to the accident before the vehicle travelled two-tenths of a mile. Harris testified that the distance between the place where Patterson claimed to have stopped to urinate and the place where the collision occurred is further than two-tenths of a mile. He also testified that the tracking data indicates Patterson stopped at the bottom of the hill, rather than the top.

## II.

Resolving contradictory evidence, the deputy commissioner found Patterson to be not credible and rejected his version of the events. The deputy commissioner found that Patterson's stop to urinate was not the result of an emergency or a medical condition and that Patterson "failed to turn his rig's lights on" before returning to the highway. Upon an assessment of the evidence, the deputy commissioner ruled that Patterson's "injury was occasioned by his 'willful failure . . . to . . . perform a duty required by statute' as well as his concurrent 'willful breach of' various [company] safety rules." This ruling expressly tracked the language of Code § 65.2-306(A)(4) and (5).

On Patterson's request for review, the commission affirmed the deputy commissioner's denial of benefits. In its findings, the commission noted the "two specific acts at issue: (1) [d]riving with no lights; and (2) pulling off onto a shoulder." Parsing the evidence, the commission found as follows:

> [T]he computerized activity report, and Trooper Crowder's testimony, showed that the accident was caused by merging into highway traffic, from the shoulder, without lights. We have little doubt that [Patterson's] merging into highway traffic from a shoulder at night, without vehicle lights, constituted a failure to "perform a duty required by statute." Code § 65.2-306(A)(4). Similarly, while it was less clear that [Patterson] violated an employer's safety rule for pulling onto the shoulder, as Harris implied that it was the width of the shoulder, and not the act itself,

- 5 -

that was improper, there was no assertion that driving at night without lights was not a violation of the employer's policies.

The commission found, however, that Patterson did not "deliberately [keep] his lights off" but, rather, "carelessly drove without his lights." It concluded, therefore, that this was not a "willful" act.

Addressing the other act at issue, the commission ruled that Patterson was not entitled to compensation because his deliberate use of the shoulder of the highway violated state law. Its findings included the following:

> The evidence showed that [Patterson] pulled over to urinate. Officer Crowder stated that the particular statute in question concerned a failure to obey road signs, and that pulling onto a shoulder, except in an emergency, was prohibited on the interstate. This was not contradicted. We agree with the deputy commissioner that [Patterson] did not pull over because of an emergency. Pulling back onto the Interstate caused the accident, and thus we find that [Patterson's] injuries were the result of his willful misconduct.

### III.

Patterson raises four issues on this appeal: the evidence was not sufficient to support the finding that he breached a safety rule or violated a state statute; the evidence did not prove that any alleged violation was "willful"; Valley Proteins did not strictly enforce its safety rules; and no causal link existed between any violation and Patterson's injury. Valley Proteins responds that it presented sufficient evidence to support its defense and that the commission correctly found that Patterson's willful failure to perform a statutory duty barred him from receiving workers' compensation benefits. Valley Proteins does not argue that the commission's decision rests upon a breach of its safety rule.

Code § 65.2-306(A) provides six defenses an employer can raise in response to a workers' compensation claim. Although three of these defenses expressly use the term "willful," these three defenses address distinct circumstances. See Gwaltney of Smithfield, Ltd. v. Hagins,

32 Va. App. 386, 389 n.1, 528 S.E.2d 162, 163 n.1 (2000). They provide that compensation is barred by (i) an "employee's willful misconduct," (ii) an "employee's willful failure to use a safety appliance or to perform a duty required by statute," or (iii) an "employee's willful breach of . . . [an employer's] rule or regulation" that has been communicated to the employee. Code § 65.2-306(A)(1), (4), and (5).

At the outset, we note that, at the evidentiary hearing, Valley Proteins raised the defenses provided in Code § 65.2-306(A)(4) and (5), and it argued that Patterson "willfully failed and/or refused to perform a duty required by statute" and "willfully failed and/or refused to follow the employer's company policy and/or safety rules." The deputy commissioner found that Valley Proteins prevailed on both issues. On its review, the commission relied upon the officer's testimony about the highway signs barring non-emergency stopping and it denied Patterson's claim for benefits, finding that he stopped in disregard of the signs— a violation of the state statute. In its decision, however, the commission used the language "willful misconduct," which is pertinent to Code § 65.2-306(A)(1).

Because the employer defended the claim under Code § 65.2-306(A)(4) and (5), not Code § 65.2-306(A)(1), we hold that the issues in the case were Patterson's alleged violation of statute and breach of company rules, and we interpret the commission's opinion as limited to these issues. See Hagins, 32 Va. App. at 389 n.1, 528 S.E.2d at 163 n.1. We conclude that the text of the commission's decision expressly referenced only Code § 65.2-306(A)(4) and barred Patterson's claim for violation of a statute, that the commission did not rest its decision upon a willful violation of the company's safety rule, and further that the commission's use of the term "willful misconduct" was intended to be a generic reference to the "willful" act of failing to perform in accordance with the statute.

- 7 -

VIOLATION OF STATUTE

Patterson contends Valley Proteins did not prove he violated a state statute by stopping to urinate on the shoulder of the highway. He argues that the commission did not cite which statute he violated, that "emergency" has not been defined by statute or case law, and that he did not impede traffic when parked on the shoulder of the highway. Valley Proteins argues that Patterson violated both Code § 46.2-830 and Code § 46.2-888 when he stopped on the shoulder of the highway to urinate.

Code § 65.2-306(A)(4) bars compensation benefits for an employee's injury caused by "the employee's willful failure or refusal to . . . perform a duty required by statute." Viewed in the light most favorable to Valley Proteins, the prevailing party below, see R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 309 S.E.2d 788, 788 (1990), the evidence proved that numerous signs were posted limiting the highway's shoulder for emergency use only. Trooper Crowder testified without contradiction that use of the shoulder for other purposes violates Code § 46.2-830, which provides in part that "drivers of vehicles shall obey lawfully erected signs."

At the evidentiary hearing, Patterson acknowledged knowing that the shoulder of the interstate highway is designated for emergency use and that using it for non-emergency purposes is a violation of the statute. Patterson testified, however, that he stopped because the urge to urinate suddenly "hit [him] . . . and [he] had to go."

The commission "agree[d] with the deputy commissioner that [Patterson] did not pull over because of an emergency." The word "emergency" has a well-recognized meaning; it "imports 'immediate necessity.'" City of Portsmouth v. City of Chesapeake, 205 Va. 259, 266, 136 S.E.2d 817, 823 (1964). The dictionary defines it as "an unforeseen combination of circumstances or the resulting state that calls for immediate action." Webster's Third New Int'l

Dictionary 741 (1993); see also Garnot v. Johnson, 239 Va. 81, 86, 387 S.E.2d 473, 476 (1990) (applying the dictionary definition of "emergency" when reviewing a jury instruction).

The evidence in the record proved that shortly before Patterson stopped to urinate he had passed an exit from the highway where a truck stop and several service stations were located. Patterson testified he was "sure that . . . if [he] had to go at that time [he] would have pulled off [at that exit]," indicating that he did not need to urinate when he passed this exit. Patterson's testimony, unsupported by any evidence of a medical condition that produced a sudden urgency, was a matter for the commission to determine based upon an assessment of the evidence and Patterson's credibility.

The commission's rejection of Patterson's testimony is manifested in its analysis of the evidence. Contrary to Patterson's testimony, the commission found that the lights on his vehicle were not illuminated. The opinion expressly states that "the evidence showed . . . the accident . . . more likely than not resulted from . . . entering the highway . . . with his lights off." Although the commission ruled that this was merely a negligent act, the finding, nevertheless, is a rejection of Patterson's express testimony. Likewise, the commission accepted Harris's testimony concerning the vehicle's tracking data. That evidence established, contrary to Patterson's testimony, that Patterson's vehicle had not traveled more than two-tenths of a mile when it was hit.

The rejection of specific portions of Patterson's testimony brought into question Patterson's version of the entire incident. Disbelieving Patterson's testimony, the commission found no circumstances constituting a medical emergency or any other emergency. We hold that the commission's finding that Patterson's stop was not the result of an unforeseen combination of circumstances is based upon a rejection of his explanation and upon other credible evidence.

Although Trooper Crowder mentioned Code § 46.2-888, which provides that "[n]o person shall stop a vehicle in such manner as to impede or render dangerous the use of the highway by others, except in the case of an emergency, accident, or a mechanical breakdown," he indicated this statute had no bearing in this case because Patterson did not stop *on* the highway. Because the commission did not discuss Code § 46.2-888 or impeding traffic by stopping on the highway, we need only address the violation of Code § 46.2-830. See Hot Shot Express, Inc. v. Brooks, 264 Va. 126, 133-34, 563 S.E.2d 764, 768 (2002) (noting that Code § 46.2-888 pertains to stopping *on* the highway). We hold, therefore, that credible evidence supports the commission's finding that Patterson's use of the shoulder of the highway was not an emergency and violated Code § 46.2-830.

WILLFULNESS

Patterson contends that because he did not have a "wrongful intention" in stopping on the shoulder, his conduct could not be considered "willful." Patterson argues that he believed his need to urinate constituted an emergency and that this misunderstanding means he did not willfully violate the statute. The employer responds by pointing to the commission's references to Patterson's lack of credibility and argues that this is a factual issue because the commission did not believe that Patterson considered his situation to be an emergency.

The statute requires the employer to show the act was willful in order to succeed on this defense. "In common usage the word 'willful' is considered synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional.'" McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988) (citation omitted). Thus, the principle is well established that in the civil context "willful" denotes "an act which is intentional, knowing, or voluntary." Angstadt v. Atl. Mut. Ins. Co., 254 Va. 286, 293, 492 S.E.2d 118, 122 (1997); see also RF&P Corporation v. Little, 247 Va. 309, 320, 440 S.E.2d 908, 915 (1994) (holding that "[c]onduct is 'willful' when it is

- 10 -

intentional"). Equally well established is the rule that the commission's finding that conduct is willful is a fact determination. Ivey v. Puckett Constr. Co., 230 Va. 486, 488, 338 S.E.2d 640, 641 (1986).

The commission found that Patterson "acted deliberately in pulling onto the shoulder" of the highway. In an early workers' compensation case, involving a safety rule, the Supreme Court equated "willful" and "deliberate."

> "The meaning of the word (wilful) . . . is 'with deliberate intent.' If the employee knows the rule, and yet intentionally does the forbidden thing, he has 'wilfully failed to obey' the rule. It is not necessary for the employer to show that the employee, having the rule in mind, determined to break it; it is enough to show that, knowing the rule, he intentionally performed the forbidden act."

Riverside & Dan River Cotton Mills v. Thaxton, 161 Va. 863, 872, 172 S.E. 261, 264 (1934) (citations omitted).

Patterson testified that he knew that state law limited the use of the emergency lane. The evidence proved, therefore, he knew the law and intentionally stopped on the shoulder. When he stopped on the shoulder without an emergency need and then drove back onto the interstate highway, this conduct was a deliberate action and was a sufficient basis upon which the commission could find he acted willfully. See King v. Empire Collieries Co., 148 Va. 585, 590, 592, 139 S.E.2d 478, 479-80 (1927) (applying the statutory term "willful" in the context of a failure or refusal to perform a duty required by statute); see also VEPCO v. Kremposky, 227 Va. 265, 269-70, 315 S.E.2d 231, 233-34 (1984) (explaining the holding in King). It is in this context that the commission found that Patterson's injuries "were the result of his willful misconduct." Thus, we hold the evidence was sufficient to support the commission's finding that Patterson's act in stopping was "willful" and a failure to perform in accordance with the statute.

CAUSATION

Patterson contends that his merger onto the highway caused the accident, not his stopping on the shoulder. Valley Proteins argues that Patterson's improper stop at the bottom of a hill in the emergency lane proximately caused the accident because the accident was the foreseeable result of the stop.

Whether Patterson's misconduct proximately caused the accident is an issue of fact. See Uninsured Employer's Fund v. Keppel, 1 Va. App. 162, 165, 335 S.E.2d 851, 852 (1985). Proximate cause is the "'act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred.'" Coleman v. Blankenship Oil Corp., 221 Va. 124, 131, 267 S.E.2d 143, 147 (1980) (quoting Beale v. Jones, 210 Va. 519, 522, 171 S.E.2d 851, 853 (1970)). Thus, the question on appeal is whether there was sufficient evidence for the commission to find that the accident was the natural result of parking unlawfully on the shoulder of the road.

Patterson correctly argues that the accident occurred while his truck was moving. One of the risks that parking on the shoulder of the highway creates, however, is that a collision with fast-moving vehicles will occur when the driver accelerates from a stop to merge with traffic. Patterson's act of merging into traffic necessarily followed his act of deliberately stopping on the side of the road. Therefore, we hold sufficient evidence supports the commission's finding that stopping on the side of the road began a natural and continuous sequence that proximately caused the accident.

In summary, the evidence was sufficient to support the commission's findings that Patterson violated the statute by using the shoulder of the highway for a non-emergency despite posted signs designating the shoulder for emergency use only, that this violation was willful, and

that it was the proximate cause of his accident.  Accordingly, we affirm the commission's decision.

Affirmed.